954 So.2d 742 (2007)
OLD PORT COVE CONDOMINIUM ASSOCIATION ONE, INC., Appellant,
v.
OLD PORT COVE HOLDINGS, INC.; and Old Port Cove Equities, Inc., Appellees.
No. 4D05-3601.
District Court of Appeal of Florida, Fourth District.
May 2, 2007.
Daniel S. Rosenbaum and John M. Siracusa of Becker & Poliakoff, P.A., West Palm Beach, for appellant.
Jack J. Aiello and Nicole K. Atkinson of Gunster Yoakley & Stewart, P.A., West Palm Beach, for appellee.
FARMER, J.
In 1977, the developers of a condominium entered into an agreement with the Condominium Association granting the Association a right of first refusal for the purchase of a parcel of real property adjoining the condominium. The Agreement stated:
"In the event that [developer] elects to sell the real property . . . the Association shall have the right of first refusal for the purchase of said real property upon the same terms and conditions as are proposed for its sale and purchase by [developer], said right of first refusal to be exercised by the Association within thirty (30) days following written notice to it of such proposed sale, following which said right of first refusal shall terminate."
The current owners of the parcel [Owner] are the rightful successors in interest to *743 the developer, and are now using the parcel as the parking lot for an adjoining parcel owned by them. They say that the right of first refusal came to their attention in 1999 as they were preparing their properties for sale.
Believing that the grant was invalid, they brought an action against the Association for declaratory relief and to quiet title. They alleged that the right of first refusal violated the common law rule against perpetuities and was therefore void from its very inception. They sought a declaration of voidness and that the Association had no valid right, title or interest in the parcel, as well as collateral relief quieting title to the parcel in Owner. After a bench trial, the court entered final judgment in favor of the Owner. The Association appeals. We reverse.
The trial court decided this case under the common law rule against perpetuities, not considering whether the right given to the Association was instead properly characterized as a restraint on alienation. Thus the first issue on appeal is whether the grant violates the common law rule against perpetuities and, if so, whether the rule may be enforced in this case. If there is no common law perpetuities problem, then the issue is whether any restraint on alienation is unreasonable and, if so, how the right may be reformed to comply with substantive law.
As the court explained in Iglehart v. Phillips, 383 So.2d 610 (Fla.1980), about the common law rule against perpetuities:
"It is a rule of law, not of construction, and it applies to legal and equitable estates of both realty and personality. It is not a rule that invalidates interests which last too long, but interests which vest too remotely. In other words, the rule is concerned not with the duration of estates but with the time of their vesting." [e.s.]
383 So.2d at 614. Iglehart involved an option giving the grantor's heirs the right to repurchase the same land at a price fixed in the option. As to the issue of the rule against perpetuities the court said:
"Although we conclude that the option in this case might be subject to the rule against perpetuities, such a finding is not necessary to answer the first question since we find this repurchase option is more appropriately classified as an unreasonable restraint on the use of the subject property." [e.s.]
Id. The right of first refusal in this case a third party option to purchaseis different only in the sense that the price is not fixed. Applying Iglehart, as we are bound to do, the option would be "more appropriately classified" as a possible restraint on alienation, not as a violation of any common law rule against perpetuitiesassuming there is any such thing applicable in Florida.
In this case the text of this grant is clear that the right became vested from the moment of the agreement. It is exercisable only when Owner gives the Association written notice of the proposed sale. The right would then terminate if not exercised within 30 days of such notice.
This kind of right of first refusal does not really involve any kind of remote vesting. It is a contractual right that vested with the agreement itself. The rule of perpetuities was meant to defeat rights vesting only in some remote future, not those already existing. We doubt that the common law rule against perpetuities ever applied to this kind of right of first refusal.
Nor does it impose any burden hindering or impeding a sale. Under its plain terms, the right would be executory only when the owner decides to sell the land. At that point, the Association could purchase the land at the owner's sale price. *744 If the price seems too high, the Association can simply exercise its right not to purchase.[1] Owner can proceed to sell in the market and get its price. But whether the right is exercised by the Association or the property is instead sold to someone else, either way Owner gets its sale at a price it has agreed upon. How is Owner burdened? How has any remote vesting affected its right to sell? The right in this case is not only less onerous than the one in Iglehart, it is not onerous to Owner at all.
Understanding the current place of the Florida common law rule against perpetuities is critical. In Iglehart the court said unequivocally that:
"it should be recognized that the rule against perpetuities in the State of Florida is now governed by a statute adopted by the legislature in 1977, subsequent to the commencement of this case. The rule as rewritten by statute excludes from its operation restraints of the type contained in the instant case." [e.s.]
383 So.2d at 614. The court thus recognized and gave effect to the 1977 statutory abrogation of the common law rule as regards the 1959 conveyance at issue in Iglehart. Clearly the court was not constrained from retroactively applying ("is now governed") the text of the statute.
The statute to which the 1980 Iglehart opinion referred said:
"The rule against perpetuities does not apply to . . . options to purchase in gross or in a lease or preemptive rights in the nature of a right of first refusal, but no option in gross is valid for more than 40 years from the date of its creation."
§ 689.22(3)(a)(7), Fla. Stat. (1977). This statute was repealed in 1988 and replaced by what is now section 689.225. See Ch. 88-40, § 2, Laws of Fla.; § 689.225, Fla. Stat. (2006). The 1988 revision of the statute added the following provision about retroactivity:
"If a nonvested property interest . . . was created before October 1, 1988, and is determined in a judicial proceeding commenced on or after October 1, 1988, to violate this state's rule against perpetuities as that rule existed before October 1, 1988, a court, upon the petition of an interested person, may reform the disposition in the manner that most closely approximates the transferor's manifested plan of distribution and is within the limits of the rule against perpetuities applicable when the nonvested property interest . . . was created." [e.s.]
§ 689.225(6)(c), Fla. Stat. (1989). These words constitute a clear legislative mandate to apply section 689.225 retroactively. Owner was on notice of this provision for more than a decade before this suit was commenced. If Owner thought that the right of first refusal was enduring too long, that the parties really intended that it not last as long as their agreement might suggest, it certainly had the right to bring an action under the statute to reform the right. But invalidation of the right is the least preferred remedy under the statute.
In 2000, ten years later, the Legislature added the following provision into section 689.225:
"This section is the sole expression of any rule against perpetuities or remoteness in vesting in this state. No common-law rule against perpetuities or remoteness in vesting shall exist with respect to any interest or power regardless of whether such interest or power is governed by this section." [e.s.]
*745 Ch. 2000-245, § 1, Laws of Fla.; § 689.225(7), Fla. Stat. (2005). Retroactive application could hardly have been stated more clearly. Under these statutory provisions it is manifest that the legislature meant for section 689.225 to be applied forwards and backwards. The plain meaning of this statute is again that the statutory repeal of the common law rule against perpetuities is fully retroactive and operative. There can no longer be any proper application of the common law rule against perpetuities in Florida. See Sander v. Ball, 781 So.2d 527, 528 (Fla. 5th DCA 2001) ("It now appears from section 689.225(7), Florida Statutes (2000), that such abolition of the common law rule was intended."). Unless courts are determined to indulge a fiction that parties to such an agreement have a vested interest in secretly intending the agreement to be void when madethereby deceiving the other partyrepeal of the common law rule making such agreements void by itself does not impair any vested interests.
Even under the common law rule, there was a strong policy of preferring validation of deed provisions arising from consensual agreements. The RESTATEMENT OF PROPERTY itself announced a preference for the "legally more effective" construction that would save an agreement, not the one that would invalidate it. See RESTATEMENT OF PROPERTY, § 375. There are strong policy reasons favoring this rule of validation. It simply makes no sense to suppose that a party to an agreement allocating benefits to both sides actually intends for an entire agreement to be void. This common sense principle of construction has now been codified by statute. § 689.225(7), Fla. Stat. (2006) ("unless a contrary intent appears, it shall be presumed that the transferor of the interest intended that the interest be valid").
The trial court decision in this case was based solely on Fallschase Development Corporation v. Blakey, 696 So.2d 833 (Fla. 1st DCA 1997), where the court used the rule against perpetuities to void a 1975 right of first refusal contained in a contract. Although the holder of the right in Fallschase prayed for reformation under the statute, a majority of the District Court panel refused the statutory remedy. In discussing retroactive application of section 689.225, the Fallschase majority relied on the substantive-procedural distinction. Finding the courts in other states divided on retroactive application of statutes repealing the rule against perpetuities, the majority concluded that the statute was substantive and that it would not be enforced to defeat "vested" rights. Curiously, the majority did not explicate the precise vested right that would be defeated or impaired by such an application.
The majority in Fallschase purported to follow the supreme court's holdings on retroactive application in State Farm Mutual Automobile Insurance Company v. Laforet, 658 So.2d 55, 61 (Fla.1995) ("The general rule is that substantive statute will not operate retrospectively absent clear legislative intent to the contrary but procedural or remedial statute operates retrospectively"); and Alamo Rent-A-Car Inc. v. Mancusi, 632 So.2d 1352, 1358 (Fla. 1994) (substantive statute is presumed to operate prospectively rather than retrospectively unless legislature clearly expresses its intent that statute operates retrospectively, especially when retrospective operation of law would impair or destroy existing rights; remedial statutes may be applied retrospectively to pending cases). Clearly this general rule does not entirely prohibit retroactive application of all substantive statutesonly those impairing or defeating vested rights. Necessarily, it is incumbent on an appellate court to identify the rights that are vested and show how *746 they would be impaired by the retroactive application of the statute. The majority in Fallschase made no such attempt.
The dissent in Fallschase, however, read section 689.225 as we have done: it was plainly intended to apply retroactively. 696 So.2d at 838 (Wolf, J., dissenting). The Fallschase dissent concluded that section 689.225 did not create any obligations or impose any penalties that were not already assumed by the complaining party under its agreement. Id. As tersely stated by Judge Wolf: "I am also unaware of a vested right to have a court strike down an obligation voluntarily undertaken as part of an enforceable written legal agreement." Id. Judge Wolf also observed that: "It is unclear to me how a grantor or his successor may complain about a statute that attempts to effectuate the grantor's expressed written intent." Id. at 837. The majority opinion in Fallschase is in conflict with Iglehart and the statute. We reject Fallschase.
To bring this case to a proper conclusion, we also address whether, as a matter of law, Owner established prima facie in the trial court that this purchase option unreasonably restrains alienation. The requirements for such options as restraints on alienation were also discussed in Iglehart:
"Although the law is clear that a repurchase option at market or appraised value for unlimited duration is not an unreasonable restraint, the situation changes substantially when the price is fixed in the option. It is the generally accepted rule that a fixed price repurchase option of unlimited duration, independent of the lease, is an unreasonable restraint.

"An option for a fixed price clearly discourages any improvements of the land by the existing property owner because he could never recover the value of the improvements should the optionee exercise the option."
383 So.2d 610, 615. Here again, under Iglehart's clear holding, this option would be unreasonable only if it involved a fixed price.
Unreasonableness as a restraint on alienation for this kind of option turns on whether the price is fixed by the option itself or is instead allowed to be determined by the relevant market when the sale is had. Id. The option right in this case is at market value. It states: "the Association shall have the right of first refusal for the purchase of said real property upon the same terms and conditions as are proposed for its sale by [Owner]." [e.s.] Obviously from its plain text, the option is triggered only when Owner proposes to sell the property. In offering to sell, Owner could either specify a price or let buyers make the offer. Either way, it is market value that is the basis for the option. Owner produced no factors during the trial that would sustain a finding that it is unreasonable. The right of first refusal is not unreasonable. It should be enforced.
The rules for land titles are not meant to be applied in ways sowing doubts about their application and outcomes. Buyers and sellers of land must be able to know and predict what they may do and what they should avoid. Parties to a sale of land are strongly presumed to intend valid transactions. Reading their agreements as void, especially years after a party has relied on contractual rights not yet executory, can create great uncertainty and unfairness. We read the legislature's statutes repealing the common law rule against perpetuities as a policy decision to validate transactions in land of the kind involved here whenever possible and to curb the uncertainties. We certify our *747 conflict with Fallschase to the Supreme Court.
Reversed and remanded for consistent proceedings.
SHAHOOD and TAYLOR, JJ., concur.
NOTES
[1] We deal here with market price. Owner does not claim that the contract gave it a right to sell to the Association at a price above market value.