986 So.2d 1279 (2008)
OLD PORT COVE HOLDINGS, INC., et al, Petitioner,
v.
OLD PORT COVE CONDOMINIUM ASSOCIATION ONE, INC., Respondent.
No. SC07-1032.
Supreme Court of Florida.
July 10, 2008.
*1280 Jack J. Aiello and Nicole K. Atkinson of Gunster, Yoakley and Stewart, P.A., West Palm Beach, FL, for Petitioners.
Daniel S. Rosenbaum, Richard Valuntas and John M. Siracusa of Becker and Poliakoff, P.A., West Palm Beach, FL, for Respondent.
CANTERO, J.
We consider the parameters of a doctrine that has been "long cherished by law school professors and dreaded by most law students: the infamous rule against perpetuities." Byke Constr. Co. v. Miller, 140 Ariz. 57, 680 P.2d 193, 194 (Ct.App.1984); see also Shaver v. Clanton, 26 Cal.App.4th 568, 31 Cal.Rptr.2d 595, 596 (1994) (describing the rule against perpetuities as "every first-year law student's worst nightmare"). Specifically, we must decide whether section 689.225, Florida Statutes (2000), which addresses the same rule, retroactively abrogated the common law rule. We also consider whether the rule applies *1281 to rights of first refusal, which are at issue here. We review Old Port Condominium Ass'n One, Inc. v. Old Port Cove Holdings, Inc., 954 So.2d 742 (Fla. 4th DCA 2007), which held that section 689.225 retroactively abrogated the rule. Id. at 745. That court certified conflict with Fallschase Development Corp. v. Blakey, 696 So.2d 833 (Fla. 1st DCA 1997). We have jurisdiction to resolve the certified conflict. See art. V, § 3(b)(4), Fla. Const.
We first resolve the conflict by holding that section 689.225 did not retroactively abolish the common law rule against perpetuities. We then explain why the rule against perpetuities does not apply to rights of first refusal anyway. We therefore approve the result in Old Port Cove, 954 So.2d 742, and disapprove Fallschase, 696 So.2d 833, to the extent it finds that the common law rule applies to rights of first refusal.

I. FACTS AND PROCEDURAL HISTORY
This case stems from an agreement ("the Agreement") executed over thirty years ago (in 1977) in which Old Port Cove Investment granted Old Port Cove Condominium Association One, Inc. ("the Association") a right of first refusal in a parcel of property. The Agreement provides, in pertinent part:
In the event that OPCI elects to sell the real property ... other than to the persons or corporations which form the OPCI JOINT VENTURE, or to any corporation or other entity owned or controlled by OPCI or by any member of said JOINT VENTURE, or a successor or successors "to the interest of any member in the JOINT VENTURE", the ASSOCIATION shall have the right of first refusal for the purchase of said real property upon the same terms and conditions as are proposed for its sale and purchase by OPCI, said right of first refusal to be exercised by the ASSOCIATION within thirty (30) days following written notice to it of such proposed sale, following which said right of first refusal shall terminate.
Old Port Cove Holdings, Inc. and Old Port Cove Equities, Inc. ("Owners") the successors-in-interest to the OPCI Joint Venture, now own the property, which is used as a parking lot for an adjacent marina they own.
Twenty-five years after the Agreement, in 2002, the Owners sued to obtain a declaratory judgment and to quiet title to the property, arguing that the right of first refusal violates the common law rule against perpetuities. The Association contested the suit, raising several defenses and counterclaiming for a declaratory judgment and reformation of the Agreement. The trial court declared the right of first refusal void ab initio and quieted title in the Owners' favor. Relying primarily on Fallschase, 696 So.2d 833, the court concluded that the Agreement violated the rule against perpetuities and rejected the Association's argument that section 689.225, Florida Statutes, retroactively abolished the rule.
On appeal, the Fourth District Court of Appeal reversed. Old Port Cove, 954 So.2d at 743. Although not deciding the issue, the court noted that a right of first refusal does not involve remote vesting and doubted "that the common law rule against perpetuities ever applied to this kind of right of first refusal." Old Port Cove, 954 So.2d at 743. The court then held that, assuming the rule did apply, section 689.225, Florida Statutes, retroactively abrogated it. Id. at 745. The court certified conflict with Fallschase. Old Port Cove, 954 So.2d at 746-47.
In Fallschase, 696 So.2d at 833, the First District considered two issues: (1) *1282 whether a right of first refusal in a contract violated the common law rule against perpetuities; and (2) whether the right of first refusal should be reformed under section 689.225(6)(c), Florida Statutes (1995) (allowing reformation of a nonvested property interest created before October 1, 1988, where the property interest violated the rule against perpetuities as it existed when the interest was created). As to the first issue, the First District acknowledged "some authority for the proposition that the rule against perpetuities should not be applied to a right of first refusal," but concluded that "the stronger view is `that the agreement for the right of first refusal must not violate the rule against perpetuities.'" Id. at 835 (quoting Watergate Corp. v. Reagan, 321 So.2d 133, 136 (Fla. 4th DCA 1975)). It held that because the agreement at issue purported to create "an unlimited duration for exercise of the right of first refusal," it violated the rule. Id. Judge Wolf dissented in part, noting that he was "unaware of a vested right to have a court strike down an obligation voluntarily undertaken as part of an enforceable written legal agreement." Fallschase, 696 So.2d at 838 (Wolf, J., concurring in part and dissenting in part); see also Old Port Cove, 954 So.2d at 746 (agreeing with Judge Wolf). On the second issue, the First District concluded that the Legislature intended retroactive application of the reformation provision in subsection (6)(c), id. at 836, but that the statute could not be applied retroactively to defeat the owner's "vested right to dispose of the property to whomever he chose." Id. at 837.
We now resolve the conflict.

II. THE HISTORY OF THE RULE AGAINST PERPETUITIES
The rule against perpetuities developed through a series of English cases beginning in 1682 and spanning about 150 years. See 10 Richard R. Powell, Powell on Real Property § 71.02 (Michael Allan Wolf ed.2007). At one time, the common law rule was a part of the law of nearly every jurisdiction in the United States. Id. § 71.03. By the end of the twentieth century, however, only a handful of jurisdictions still followed it. Id. Today, perpetuities law varies from state to state. See Lynn Foster, Fifty-One Flowers: Post-Perpetuities War Law and Arkansas's Adoption of USRAP, 29 U. Ark. Little Rock L.Rev. 411, 411-13 (2007); Frederick R. Schneider, A Rule Against Perpetuities for the Twenty-First Century, 41 Real Prop. Prob. & Tr. J. 743, 747-48 (2007).
In Florida, the rule has had a rocky history. It was first adopted judicially, as part of the common law. It was later adopted legislatively, then replaced with a uniform rule, and now it has been legislatively abolished. To provide context for our discussion, we briefly discuss this history.

A. The Common Law Rule against Perpetuities
The rule against perpetuities is generally stated with deceptive simplicity as follows: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." Iglehart v. Phillips, 383 So.2d 610, 614 (Fla.1980) (quoting John Chipman Gray, The Rule Against Perpetuities, § 201 (4th ed.1942)). The rule "was designed to prevent the perpetual entailment of estates and give them over to free and unhampered conveyance." Story v. First Nat'l Bank & Trust Co., 115 Fla. 436, 156 So. 101, 104 (1934); see also Iglehart, 383 So.2d at 613 (recognizing that the rule's "purpose is to ensure that property is reasonably available for development by prohibiting restraints that remove property from a beneficial use for an extended period of time"). We have explained *1283 that the rule is "more accurately speaking, the rule against remoteness or remote vesting of an estate or interest therein." Adams v. Vidal, 60 So.2d 545, 549 (Fla.1952). "It is not a rule that invalidates interests which last too long, but interests which vest too remotely. In other words, the rule is concerned not with the duration of estates but with the time of their vesting." Iglehart, 383 So.2d at 614.

B. The Statutory Rule and Its Various Amendments
The rule against perpetuities has been adopted by statute, amended, and later abrogated. The Legislature first codified the rule in 1977. The statutory rule provided:
STATEMENT OF THE RULE.  No interest in real or personal property is valid unless it must vest, if at all, not later than 21 years after one or more lives in being at the creation of the interest and any period of gestation involved. The lives measuring the permissible period of vesting must not be so numerous or designated in such a manner as to make proof of their end unreasonably difficult.
Ch. 77-23, § 1, Laws of Fla. (codified at § 689.22(1), Fla. Stat. (1979)). The statute exempted various interests, including "[o]ptions to purchase in gross or in a lease or preemptive rights in the nature of a right of first refusal," but limited them to forty years. Ch. 77-23, § 1, Laws of Fla. (codified at § 689.22(3)(a)(7) (1979)).[1]
In 1988, the Legislature "replac[ed] the existing statutory rule with the `Florida Uniform Statutory Rule Against Perpetuities.'" Ch. 88-40, Laws of Fla. It states the rule as follows:
(2) STATEMENT OF THE RULE.
(a) A nonvested property interest in real or personal property is invalid unless:
1. When the interest is created, it is certain to vest or terminate no later than 21 years after the death of an individual then alive; or
2. The interest either vests or terminates within 90 years after its creation.
Id. § 1 (codified at § 689.225(2), Fla. Stat. (1989)). With eight exceptions, the statute excludes nonvested property interests and powers of appointment arising out of "a nondonative transfer." Id. (codified at § 689.225(5)(a), Fla. Stat. (1989)). The law also added, among other things, a provision through which interests created before October 1, 1988, that violate the rule against perpetuities could be reformed "in the manner that most closely approximates the transferor's manifested plan ... and is within the limits of the rule against perpetuities applicable when the nonvested property interest or power of appointment was created." Id. (codified at § 689.225(6)(c), Fla. Stat. (1989)).
In 2000, the Legislature added the following language to section 689.225(7): "This section is the sole expression of any rule against perpetuities or remoteness in vesting in this state. No common-law rule against perpetuities or remoteness in vesting shall exist with respect to any interest or power regardless of whether such interest or power is governed by this section." Ch. 2000-245, § 1, Laws of Fla. (codified at § 689.225(7), Fla. Stat. (2001)). The Fourth District relied primarily on this language to conclude that "[r]etroactive application could hardly have been stated more clearly." Old Port Cove, 954 So.2d at 745.
*1284 Having explained the history of the rule in Florida, we now address the issues presented.

III. ANALYSIS
We address two issues involving the rule against perpetuities. The first  the issue on which the district court certified conflict  is whether the legislative abrogation of the rule applies retroactively. We resolve the conflict by holding that, based on the language of the statute itself, abrogation of the rule does not apply retroactively. The second issue, on which conflict also exists (albeit in dictum), is whether the common law rule against perpetuities even applies to rights of first refusal. On that issue, we conclude that, because the same concerns about remote vesting do not exist with respect to rights of first refusal, the rule does not apply to such rights.

A. Retroactive Abrogation
The Association argues that section 689.225(7), Florida Statutes, has retroactively abolished the common law rule against perpetuities. For the reasons explained below, we disagree.
In the absence of clear legislative intent to the contrary, a law is presumed to operate prospectively. State v. Lavazzoli, 434 So.2d 321, 323 (Fla.1983); see also Metro. Dade County v. Chase Fed. Hous. Corp., 737 So.2d 494, 499 (Fla.1999) ("[R]equiring clear intent assures that [the legislature] has itself affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." (quoting Arrow Air, Inc. v. Walsh, 645 So.2d 422, 425 (Fla.1994))). In determining whether a statute applies retroactively, we consider two factors: (1) whether the statute itself expresses an intent that it apply retroactively; and, if so, (2) whether retroactive application is constitutional. See, e.g., Chase Fed., 737 So.2d at 499. We conclude that the plain language of section 689.225 does not evince an intent that the statute apply retroactively. We therefore need not address the second prong. See, e.g., Memorial Hosp.-W. Volusia, Inc. v. News-Journal Corp., 784 So.2d 438, 441 (Fla.2001) (finding it unnecessary to reach the second prong of the retroactivity analysis absent clear legislative intent to apply the statute retroactively).
The Association argues that section 689.225(7) reflects an intent to retroactively abolish the rule. Therefore, although quoted above, the language bears repeating: "This section is the sole expression of any rule against perpetuities or remoteness in vesting in this state. No common-law rule against perpetuities or remoteness in vesting shall exist with respect to any interest or power regardless of whether such interest or power is governed by this section." We agree that this language reflects an intent to abrogate the common law rule. We disagree, however, that it reflects a clear intent to do so retroactively.
Nothing in section 689.225(7) states, or even implies, that it is to be applied retroactively. It reflects only an intent to abrogate the common law rule. Moreover, retroactivity would be inconsistent with the immediately preceding subsection. See § 689.225(6), Fla. Stat. (2007); see also State v. Riley, 638 So.2d 507, 508 (Fla. 1994) (noting that two consecutive subsections of the same statute should be read in pari materia). That subsection provides that the statutory rule against perpetuities "applies to a nonvested property interest or power of appointment that is created on or after October 1, 1988." § 689.225(6)(a), Fla. Stat. (2007) (emphasis added). Further, it permits judicial reformation of interests created before October 1, 1988, "in *1285 the manner that most closely approximates the transferor's manifested plan ... and is within the limits of the rule against perpetuities applicable when the nonvested property interest or power of appointment was created." § 689.225(6)(c), Fla. Stat. (2007) (emphasis added). The Association's construction would render that language meaningless. See, e.g., Koile v. State, 934 So.2d 1226, 1231 (Fla.2006) ("[P]rovisions in a statute are not to be construed as superfluous if a reasonable construction exists that gives effect to all words and provisions.").
We therefore resolve the conflict by holding that the abrogation of the common law rule against perpetuities does not apply retroactively.

B. The Rule Against Perpetuities Does Not Apply to Rights of First Refusal
While we have resolved the certified conflict, the decisive question in this case is whether rights of first refusal are subject to the common law rule in the first place. Rights of first refusal are not subject to the statutory rule. See § 689.225(5)(a), Fla. Stat. (2007). We conclude they are not subject to the common law rule, either.
To decide whether a right of first refusal violates the rule, we must first define a right of first refusal. As one court has explained it,
A right of first refusal is a right to elect to take specified property at the same price and on the same terms and conditions as those contained in a good faith offer by a third person if the owner manifests a willingness to accept the offer. The right of first refusal ripens into an option once an owner manifests a willingness to accept a good faith offer.
Pearson v. Fulton, 497 So.2d 898, 900 (Fla. 2d DCA 1986). Rights of first refusal are also known as preemptive rights. See 6 Am. L. Prop. § 26.66 (1952). Such rights vary in form: some require offering the property at a fixed price (or some price below market value), while others (like the one here) simply allow the holder to purchase the property on the same terms as a third party. See Shiver v. Benton, 251 Ga. 284, 304 S.E.2d 903, 905 (1983). They are akin to  and sometimes confused with  options. See Steinberg v. Sachs, 837 So.2d 503, 505 (Fla. 3d DCA 2003); Points v. Barnes, 301 So.2d 102, 104 (Fla. 4th DCA 1974). An option contract is "a unilateral contract which gives the option holder the right to purchase under the terms and conditions of the option agreement." S. Inv. Corp. v. Norton, 57 So.2d 1, 2 (Fla. 1952). Unlike an option, however, a right of first refusal does not grant the power to compel an unwilling owner to sell. See, e.g., 6 Am. L. Prop. § 26.64.
Whether the common law rule against perpetuities applies to a right of first refusal is a question of first impression in this Court. The district courts are divided on the issue. Compare Old Port Cove, 954 So.2d at 743 (doubting that the rule applied to rights of first refusal); and Warren v. City of Leesburg, 203 So.2d 522, 526 (Fla. 2d DCA 1967) (suggesting that the rule does not apply to rights of first refusal); with Fallschase, 696 So.2d at 835 (holding that the rule does apply to rights of first refusal); Reagan, 321 So.2d at 133 (same); and Points, 301 So.2d at 104 (same).
Other jurisdictions are likewise split. Of those that have considered this issue, a majority have concluded that the rule applies to rights of first refusal.[2] A notable *1286 minority, however, has held otherwise.[3] We find the minority view more consistent with Florida law.
Where they discuss the rationale, courts adopting the majority view generally conclude that an option or right of first refusal creates an interest in property. Ferrero, 536 A.2d at 1139 ("As rights of first refusal are interests in property, the great majority of American jurisdictions have applied the Rule Against Perpetuities to such rights."); see, e.g., Stuart Kingston, 596 A.2d at 1384; Gore, 867 P.2d at 338; Martin, 348 N.E.2d at 309; Pace, 347 So.2d at 1317; Melcher, 435 P.2d at 114; McHugh, 380 S.E.2d at 874; Smith, 296 S.E.2d at 854. In Florida, however, an option does not create a legal or equitable interest in property. As we explained over fifty years ago, "until an optionee exercises the right to purchase in accordance with the terms of his option he has no estate, either legal or equitable, in the *1287 lands involved." Gautier v. Lapof, 91 So.2d 324, 326 (Fla.1956). We have since reiterated that principle. See Leon County Educ. Facilities Auth. v. Hartsfield, 698 So.2d 526, 530 (Fla.1997) ("[T]his Court has long held that the status of parties to the ordinary lease with an option to purchase remains that of landlord and tenant until the option is exercised and that the lessee has no equitable interest in the property."); BancFlorida v. Hayward, 689 So.2d 1052, 1054 (Fla.1997) ("Under Florida law, an option to purchase property creates neither an equitable interest nor an equitable remedy.").
As these cases show, Florida law has consistently held that an option does not create an interest in land. Therefore, a right of first refusal  which may or may not ripen into an option depending on whether the owner decides to sell, see, e.g., Pearson, 497 So.2d at 900  cannot create an interest in land, either. See Randolph, 727 N.W.2d at 392 ("Because the right of first refusal gives the holder fewer rights than an option, we conclude that if the latter does not create an interest in land, neither does the former."); Robroy, 622 P.2d at 370 ("The holder of a right of first refusal has far less of an interest in land than the holder of an ordinary option.").
This conclusion is consistent with our approach in Iglehart, 383 So.2d 610. There, we considered whether a fixed-price right of first refusal for an unlimited duration should be analyzed under the rule against perpetuities or under the rule against unreasonable restraints on alienation. Id. at 613. We concluded that it was more appropriately analyzed under the rule against unreasonable restraints: "Although we conclude that the option in this case might be subject to the rule against perpetuities, such a finding is not necessary to answer the first question since we find this repurchase option is more appropriately classified as an unreasonable restraint on the use of the subject property." Id. at 614 (emphasis added). We held that the fixed-price repurchase option at issue violated the rule against unreasonable restraints, but recognized that "the law is clear that a repurchase option at market or appraised value for unlimited duration is not an unreasonable restraint." Id. at 615.
Although in Iglehart we found it unnecessary to address whether a right of first refusal is subject to the rule against perpetuities, our opinion noted our preference for analyzing rights of first refusal under the rule against unreasonable restraints. Id. at 616; see also 6 Am. L. Prop. § 26.66 (arguing that courts should have analyzed options and preemptions under the rule against unreasonable restraints on alienation rather than the rule against perpetuities because "[e]verything of value in the option device could have been preserved, and its evils combated more effectively than can be done through the rule against perpetuities").
We reaffirm our holding in Iglehart that rights of first refusal should be analyzed under the rule against unreasonable restraints, and close the door left open there by concluding that rights of first refusal are not subject to the common law rule against perpetuities.[4] A right of first refusal is a contractual right. The rule against perpetuities, on the other hand, is "a rule of property law, not of *1288 contract law." Iglehart, 383 So.2d at 614; see also Warren, 203 So.2d at 526 (stating that an option does not vest the holder with an interest in the land, but is "strictly a contractual right, not a property right, while the rule against perpetuities is a rule of property rather than a rule of contract").[5]
In holding that the rule against perpetuities does not apply to rights of first refusal, we recognize that we are adopting the minority view. It also, however, appears to be the more modern one. See Jesse Dukeminier, A Modern Guide to Perpetuities, 74 Cal. L.Rev. 1867, 1908 (1986) ("The modern trend ... has been to free preemptive options from the Rule and to subject them instead to the rule against unreasonable restraints on alienation."). For example, the First Restatement of Property identified an option as subject to the rule. See Restatement (First) of Property § 413(1) (1944); see also id. cmt. e ("Preemptive provisions, being analogous to options upon a condition precedent, must comply with the rule against perpetuities in so far as their maximum duration is concerned."). The Third Restatement, however, reversed course, stating that the rule does not apply to options or rights of first refusal. Restatement (Third) of Property: Servitudes, § 3.3 (2000). The historical development is explained:
In the late 19th century ... courts began to apply [the rule] to commercial land transactions, including options [and] rights of first refusal.... The virtue of the rule was that it invalidated all interests that lacked a durational limit, thus clearing titles without any need to inquire into the utility of the arrangement. Its vice was that it operated arbitrarily, applying a time period totally unsuited to commercial transactions....
Although commentators had long complained that the rule against perpetuities should not be applied to commercial transactions, it was not until the 1980s that courts in any number followed suit.... While some courts continue to adhere to the old view, there is authority to support using restraints-on-alienation doctrine rather than the rule against perpetuities, which blindly invalidates transactions without regard to merit.
Id. cmt. b (emphasis added). We agree that applying the rule to rights of first refusal does not serve the rule's purposes, which is "to ensure that property is reasonably available for development by prohibiting restraints that remove property from a beneficial use for an extended period of time." Iglehart, 383 So.2d at 613. They are better analyzed under the rule prohibiting unreasonable restraints on alienation. See, e.g., Cambridge Co., 700 P.2d at 542 ("Because the preemptive right... poses no threat to ... free alienability... we perceive no reason to invalidate the right under the rule against perpetuities."); Bortolotti, 866 N.E.2d at 889 ("Because the holder of a right of first refusal may only choose to purchase property on the same terms as a bona fide offer.... the rule against perpetuities logically should not apply. In our view, this position is better suited for business transactions, such as the one here, in which the right of first refusal was created."); Metro. Transp. Auth., 501 N.Y.S.2d 306, 492 N.E.2d at 385 (recognizing that, at least in commercial settings, rights of first refusal are "best regulated by the rule against unreasonable restraints on alienation").

*1289 IV. CONCLUSION
We resolve the certified conflict by holding that section 689.225, Florida Statutes, has not retroactively abolished the common law rule against perpetuities. We also conclude, however, that the rule does not apply to rights of first refusal. We therefore approve the result in Old Port Cove, 954 So.2d 742, and disapprove Fallschase, 696 So.2d 833, to the extent it finds the common law rule applicable to rights of first refusal.
It is so ordered.
QUINCE, C.J., and WELLS, ANSTEAD, PARIENTE, LEWIS, and BELL, JJ., concur.
NOTES
[1] The effective date of the statute was January 1, 1979. Ch. 77-23, § 2, Laws of Fla. The parties executed the Agreement in 1977, so this statute does not apply.
[2] See, e.g., HSL Linda Gardens Props., Ltd. v. Seymour, 163 Ariz. 396, 788 P.2d 129, 130 (Ct.App.1990); Estate of Johnson v. Carr, 286 Ark. 369, 691 S.W.2d 161, 161 (1985); Strong v. Theis, 187 Cal.App.3d 913, 232 Cal.Rptr. 272, 276 (1986); Neustadt v. Pearce, 145 Conn. 403, 143 A.2d 437, 438 (1958); Stuart Kingston, Inc. v. Robinson, 596 A.2d 1378, 1383 (Del. 1991); Martin v. Prairie Rod & Gun Club, 39 Ill.App.3d 33, 348 N.E.2d 306, 309 (1976); Buck v. Banks, 668 N.E.2d 1259, 1261 (Ind.Ct.App. 1996); Trecker v. Langel, 298 N.W.2d 289, 291 (Iowa 1980); Gore v. Beren, 254 Kan. 418, 867 P.2d 330, 338 (1994); Low v. Spellman, 629 A.2d 57, 58 (Me. 1993); Ferrero Constr. Co. v. Dennis Rourke Corp., 311 Md. 560, 536 A.2d 1137, 1139 (1988); Pace v. Culpepper, 347 So.2d 1313, 1317 (Miss.1977); Nickels v. Cohn, 764 S.W.2d 124, 132 (Mo.Ct.App.1989); Mazzeo v. Kartman, 234 N.J.Super. 223, 560 A.2d 733, 737 (App.Div.1989); Village of Pinehurst v. Reg'l Inv. of Moore, Inc., 330 N.C. 725, 412 S.E.2d 645, 646 (1992); Schafer v. Deszcz, 120 Ohio App.3d 410, 698 N.E.2d 60, 62 (1997); Webb v. Reames, 326 S.C. 444, 485 S.E.2d 384, 385 (Ct.App.1997); Clark v. Shelton, 584 P.2d 875, 877 (Utah 1978); Lake of the Woods Ass'n v. McHugh, 238 Va. 1, 380 S.E.2d 872, 874 (1989); Smith v. VanVoorhis, 170 W.Va. 729, 296 S.E.2d 851, 854 (1982); Browe v. Rasmussen, 121 Wis.2d 697, 359 N.W.2d 181, 1984 WL 180227 (Wis.Ct.App. 1984); see also Hansen v. Stroecker, 699 P.2d 871, 873 (Alaska 1985) (recognizing that under the traditional approach options in gross are subject to the rule, but adopting the "wait-and-see" approach); Byke, 680 P.2d at 195 (finding the rule applicable to an option, but imposing a reasonable timeframe to avoid a violation); Campbell v. Campbell, 313 Ky. 249, 230 S.W.2d 918, 920 (1950) ("The general rule recognized by the great majority of courts is that an option ... extending beyond the period limited by the rule against perpetuities, violates such rule...."); Melcher v. Camp, 435 P.2d 107, 115 (Okla.1967) ("[T]he interest sufficient to invoke the ... rule against perpetuities is created and transferred in the ordinary option."); Hall v. Crocker, 192 Tenn. 506, 241 S.W.2d 548, 549 (1951) (recognizing that a fixed price right to repurchase must not violate the rule).
[3] See, e.g., Robertson v. Murphy, 510 So.2d 180, 182 (Ala. 1987); Cambridge Co. v. East Slope Inv. Corp., 700 P.2d 537, 542 (Colo. 1985); Shiver, 304 S.E.2d at 906; Bortolotti v. Hayden, 449 Mass. 193, 866 N.E.2d 882, 889 (2007); Randolph v. Reisig, 272 Mich.App. 331, 727 N.W.2d 388, 392 (2006); Metro. Transp. Auth. v. Bruken Realty Corp., 67 N.Y.2d 156, 501 N.Y.S.2d 306, 492 N.E.2d 379, 385 (1986); Cherokee Water Co. v. Forderhause, 641 S.W.2d 522, 526 (Tex.1982); Robroy Land Co. v. Prather, 95 Wash.2d 66, 622 P.2d 367, 369 (1980); Hartnett v. Jones, 629 P.2d 1357, 1360 (Wyo.1981); see also Weber v. Texas Co., 83 F.2d 807, 808 (5th Cir.1936) ("The option under consideration is within neither the purpose nor the reason for the rule."); cf. Great Bay Sch. & Training Ctr. v. Simplex Wire & Cable Co., 131 N.H. 682, 559 A.2d 1329, 1331 (1989) (stating that the rule does not apply to all preemptive rights, just those that "pose a substantial restraint on alienation"); Power Gas Mktg. & Transmission, Inc. v. Cabot Oil & Gas Corp., 2008 Pa. Super 54, 948 A.2d 807 (2008) (holding that a right of first refusal in an oil and gas lease agreement is not subject to the rule against perpetuities; stating "we also question whether, in the first instance, rights of first refusal... ever concern propertied estates such that they should be brought within the rule against perpetuities").
[4] Neither party has addressed whether the right of first refusal at issue here is an unreasonable restraint on alienation. We agree with the Fourth District, however, that because it is not for a fixed price, it is not an unreasonable restraint. Old Port Cove, 954 So.2d at 746; see Iglehart, 383 So.2d at 615 ("[T]he law is clear that a repurchase option at market or appraised value for unlimited duration is not an unreasonable restraint.").
[5] Because a right of first refusal is a contractual right, not a property interest, we need not consider section 689.225(6)(c), Florida Statutes, which permits reformation of "nonvested property interests" created before October 1, 1988.