LABARGA, J.
 

 Florida Insurance Guaranty Association, Inc., seeks review of the decision of the Fourth District Court of Appeal in
 
 Florida Insurance Guaranty Ass’n v. Devon Neighborhood Ass’n,
 
 33 So.3d 48 (Fla. 4th DCA 2009), on the ground that it expressly and directly conflicts with the decisions of this Court in
 
 Old Port Cove Holdings, Inc. v. Old Port Cove Condominium Ass’n One, Inc.,
 
 986 So.2d 1279 (Fla.2008), and
 
 Metropolitan Dade County v. Chase Federal Housing Corp.,
 
 737 So.2d 494 (Fla.1999). FIGA also asserts that the decision of the Fourth District expressly and directly conflicts with this Court’s decision in
 
 Menendez v. Progressive Express Insurance Co.,
 
 35 So.3d 873 (Fla.2010), which was issued after the Fourth District’s decision below. We have jurisdiction.
 
 See
 
 art. V, § 3(b)(3), Fla. Const.
 
 [1]
 
 The conflict issue in this case concerns the proper test to be utilized by a court when determining whether a statute may be applied retroactively, in this case to a contract of insurance. As we explain below, because we conclude that the district court in this case misapplied the test for retroac-tivity, we quash the decision of the Fourth District below.
 

 BACKGROUND
 

 This case arose from certain hurricane damage claims made by Devon Neighborhood Association, Inc., d/b/a Devon Neighborhood & Condominiums A-J Association, Inc. (“Devon”), under a 2004 insurance policy issued by Devon’s original insurer, Southern Family Insurance (“Southern Family”). As explained more fully below, Southern Family became insolvent and the Florida Insurance Guaranty Association (“FIGA”) then became obligated to respond to certain claims made under that insurance policy.
 

 FIGA is a public, nonprofit corporation created by statute to provide a mechanism for payment of covered claims under certain classes of insurance policies issued by insurers which have become insolvent.
 
 [2]
 

 See
 
 § 631.51, Fla. Stat. (2010);
 
 O’Malley v. Fla. Ins. Guar. Ass’n,
 
 257 So.2d 9, 10 (Fla.1971). Under Florida’s statutory insurer liquidation system, when an insurer becomes insolvent, FIGA becomes obligated to respond to covered claims that arise prior to adjudication of the insurer’s insolvency and within a specified period after insolvency.
 
 Jones v. Fla. Ins. Guar. Ass’n,
 
 908 So.2d 435, 442 (Fla.2005);
 
 see
 
 § 631.54(3), Fla. Stat. (2010) (defining “covered claim”); § 631.57, Fla.
 
 *190
 
 Stat. (2010) (stating scope of FIGA’s powers and duties). “FIGA is strictly a creature of statute.”
 
 Fla. Ins. Guar. Ass’n v. All the Way with Bill Vernay, Inc.,
 
 864 So.2d 1126, 1129 (Fla. 2d DCA 2003). “Thus, ‘the statutory language defines the extent of FIGA’s obligations. FIGA is not responsible for claims against an insurer that do not fall within FIGA’s statutory obligations.’”
 
 Fla. Ins. Guar. Ass’n v. Petty,
 
 44 So.3d 1191, 1194 (Fla. 2d DCA 2010) (quoting
 
 All the Way with Bill Vernay, Inc.,
 
 864 So.2d at 1130),
 
 review granted,
 
 53 So.3d 230 (Fla.2011). The FIGA act is expressly designed to protect the insured, rather than the insurance industry.
 
 See Jones,
 
 908 So.2d at 442. However, “the full gamut of a defunct insurance company’s liabilities was not intended to be shifted onto FIGA.”
 
 Fla. Ins. Guar. Ass’n, Inc. v. Olympus Ass’n, Inc.,
 
 34 So.3d 791, 794 (Fla. 4th DCA 2010) (quoting
 
 Williams v. Fla. Ins. Guar. Ass’n, Inc.,
 
 549 So.2d 253, 254 (Fla. 5th DCA 1989)).
 

 In this case, Devon timely filed a claim with its insurer Southern Family after the condominium was damaged during Hurricane Wilma in October 2005. Devon submitted a sworn proof of loss claim in February 2006. However, Southern Family became insolvent and was placed in receivership in April 2006. FIGA then assumed responsibility for Devon’s claims, and Devon filed a second proof of loss claim. It is undisputed that Southern Family paid Devon approximately $2.5 million, and FIGA subsequently paid Devon an additional $1.7 million.
 
 See Fla. Ins. Guar. Ass’n v. Devon,
 
 33 So.3d at 50. The record reflects that in January 2008, Devon submitted supplemental claims to FIGA totaling $4,800,286.84, and shortly thereafter, on February 11, 2008, filed suit against FIGA.
 

 FIGA answered the complaint and, in an affirmative defense, demanded an appraisal of the claimed loss under the appraisal provision contained in the 2004 insurance policy between Devon and Southern Family. The appraisal provision allowed either party to demand an appraisal of a claimed loss. FIGA also sent a letter demanding an appraisal under the policy provision, filed a motion to compel appraisal, and moved to stay the action pending the appraisal. The appraisal provision in the insurance contract at issue sets forth a procedure for resolving disputes that is somewhat similar to an arbitration process, providing that where the parties disagree on the value of the property or the amount of the loss, either party may make a written demand for an appraisal of the loss. Under this appraisal provision, each party will select an appraiser and the two appraisers will select an umpire. Also under the express terms of the policy, “[a] decision agreed to by any two will be binding.”
 
 [3]
 

 Devon objected to being required to participate in the appraisal process because it had not been provided notice of the availability of mediation — a notice requirement that was imposed on commercial residential insurers, such as Southern Family, by a 2005 amendment to section 627.7015, Florida Statutes, a provision of the Florida
 
 *191
 
 Insurance Code.
 
 [4]
 
 The trial court agreed with Devon and on January 15, 2009, denied FIGA’s motion to compel an appraisal. FIGA then took a nonfinal appeal to the Fourth District under Florida Rule of Appellate Procedure 9.130(3)(C)(iv), which was amended effective January 1, 2009, to provide for the appeal of nonfinal orders regarding entitlement to an appraisal under an insurance policy.
 
 See In re Amendments to Fla. Rules of Appellate Procedure,
 
 2 So.3d 89, 90 (Fla.2008).
 

 On appeal, the Fourth District affirmed, holding that section 627.7015, Florida Statutes, as amended in 2005, applied retroactively to Devon’s 2004 contract of insurance, including the amendment to section 627.7015(7) barring the insurer from exercising its right to an appraisal if the insurer does not give notice of mediation under subsection (2) of the statute. Because Devon had not been given notice of the availability of mediation, the district court held that section 627.7015(7) applied to bar FIGA from availing itself of the appraisal process provided in the policy. Thus, we turn next to a discussion of the 2005 amendments to section 627.7015, Florida Statutes.
 

 Section 627.7015, Florida Statutes
 

 Section 627.7015 was first enacted in 1993.
 
 See
 
 ch. 93-410, § 20, Laws of Fla. It provided for alternative dispute resolution of claims made under homeowners’ residential insurance policies before commencing the appraisal process that most homeowners’ policies required.
 
 See
 
 § 627.7015(1), Fla. Stat. (1994 Supp.). From its inception, the statute required that when a first-party claim is filed, the homeowner’s residential insurer shall notify the claimant of the right to participate in the mediation program provided in the statute.
 
 See
 
 § 627.7015(2), Fla. Stat. (1994 Supp.). The statute was amended in 2005 to expand its scope, for the first time, to “commercial residential insurance policies” such as Devon’s condominium association policy in this case.
 
 See
 
 ch. 2005-111, § 15, Laws of Fla.
 
 [5]
 
 Section 627.7015 was also amended in 2005 to provide that an insurer — now including a commercial residential insurer — which fails to give the notice of mediation required by subsection (2) is barred from insisting that the insured participate in the appraisal process provided in the insurance policy as a precondition to suit. The pertinent provisions of the statute, with the 2005 amendment language underlined, are set forth below:
 

 Section 15. Effective July 1, 2005, subsections (1) and (7) of section 627.7015, Florida Statutes, are amended, and subsection (2) of that section is reenacted, to read:
 

 627.7015 Alternative procedure for resolution of disputed property insurance claims.—
 

 (1) PURPOSE AND SCOPE. — This section sets forth a nonadversarial alternative dispute resolution procedure for a mediated claim resolution conference prompted by the need for effective, fair, and timely handling of prop
 
 *192
 
 erty insurance claims. There is a particular need for an informal, nonthreatening forum for helping parties who elect this procedure to resolve their claims disputes because most homeowner’s
 
 and commercial residential
 
 insurance policies obligate insureds to participate in a potentially expensive and time consuming adversarial process prior to litigation. The procedure set forth in this section is designed to bring the parties together for a mediated claims settlement conference without any of the trappings or drawbacks of an adversarial process. Before resorting to these procedures, insureds and insurers are encouraged to resolve claims as quickly and fairly as possible. This section is available with respect to claims under personal lines
 
 and commercial residential
 
 policies for all claimants and insurers prior to commencing the appraisal process, or commencing litigation ....
 

 (2) At the time a first-party claim within the scope of this section is filed, the insurer shall notify all first-party claimants of their right to participate in the mediation program under this section. The department [of insurance] shall prepare a consumer information pamphlet for distribution to persons participating in mediation under this section.
 

 (7)
 
 If the insurer fails to comply with subsection (2) by failing to notify a first-party claimant of its right to participate in the mediation program under this section or
 
 if the insurer requests the mediation, and the mediation results are rejected by either party, the insured shall not be required to submit to or participate in any contractual loss appraisal process of the property loss damage as a precondition to legal action for breach of contract against the insurer for its failure to pay the policyholder’s claims covered by the policy.
 

 Ch.2005-111, § 15, at 1092, Laws of Fla. The stated effective date of the amendments to section 627.7015 was July 1, 2005.
 

 The 2005 amendments to section 627.7015 made two important changes to existing law: First, the amendments applied the preexisting mediation alternative and notice requirement, as well as the requirement that the insurer pay for mediation, to “commercial residential insurance policies.” Second, the amendments added the requirement that if the insurer fails to give notice of mediation under subsection (2), the insured “shall not be required to submit to or participate in any contractual loss appraisal process of the property loss damage as a precondition to legal action.” § 627.7015(7), Fla. Stat. (2005). The insurance policy at issue in this case, issued in 2004 by Southern Family Insurance to Devon, contained such an appraisal clause in section E, which provided as follows:
 

 2. Appraisal
 

 If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
 

 a. Pay its chosen appraiser; and
 

 b. Bear the other expenses of the appraisal and umpire equally.
 

 If there is an appraisal, we will still retain our right to deny the claim. FIGA
 
 *193
 
 argued in the trial court that the 2005 amendments could not be applied retroactively to claims made under Devon’s 2004 insurance policy, but the trial court disagreed, applied section 627.7015(7) as amended, and refused to enforce the appraisal provision.
 

 On appeal, the Fourth District also held that the 2005 amendments applied retroactively to the 2004 contract of insurance and that FIGA was bound by Southern Family’s failure to give the notice required in the amended statute. The district court thus affirmed the trial court’s denial of the motion to enforce the loss appraisal provision of the contract. As explained below, because the district court did not apply the two-prong test for retroactivity that is mandated by this Court’s controlling precedent, and instead based its holding only on whether retroactive application would be constitutional, and because there is no clear evidence that the Legislature intended the 2005 amendments to apply retroactively, we quash the decision of the district court.
 

 The Decision Under Review
 

 FIGA argued in the district court that the trial court erred in not enforcing the insurance contract right to appraisal because section 627.7015, as amended in 2005, did not apply retroactively to commercial residential policies issued in 2004. The district court proceeded to analyze the retroactivity issue solely in terms of whether retroactive application would unconstitutionally impair the obligations of contract, stating:
 

 Similar to the federal constitutional contract clause, Article I, Section 10 of the Florida Constitution, prohibits the enactment of any “law impairing the obligation of contracts.” In Pomponio,
 
 [6]
 
 after reviewing the evolution of contract clause analysis by the United States Supreme Court from strict prohibition to the use of a balancing approach, the Florida Supreme Court itself adopted a balancing approach to determine whether a statute amounted to a constitutionally impermissible impairment of contract.
 

 Fla. Ins. Guar. Ass’n, Inc.,
 
 33 So.3d at 51. The Fourth District applied the balancing test set forth in
 
 Pomponio v. Claridge of Pompano Condominium, Inc.,
 
 378 So.2d 774, 780 (Fla.1979), and held that the 2005 amendments to section 627.7015 could be applied constitutionally in a retroactive manner to the 2004 contract of insurance. 33 So.3d at 53. FIGA contends that in analyzing the retroactivity question solely in terms of whether the statute may be constitutionally applied retroactively to the 2004 contract, the Fourth District misapplied controlling precedent that mandates a two-prong test for determining retroac-tivity of a statute, citing
 
 Metropolitan Dade County v. Chase Federal Housing Corp.,
 
 737 So.2d 494 (Fla.1999),
 
 Old Port Cove Holdings, Inc. v. Old Port Cove Condominium Ass’n One, Inc.,
 
 986 So.2d 1279 (Fla.2008), and this Court’s subsequent decision in
 
 Menendez v. Progressive Express Insurance Co.,
 
 35 So.3d 873 (Fla.2010). Thus, we turn to a discussion of these authorities.
 

 ANALYSIS
 

 FIGA contends that the district court failed to apply the proper test for retroactivity by ignoring the first prong—
 
 *194
 
 legislative intent — and proceeding directly to the second prong — the constitutionality of retroactive application. Our review of this question of law is de novo.
 
 See D’Angelo v. Fitzmaurice,
 
 863 So.2d 311, 314 (Fla.2003). As explained below, we agree with FIGA that our precedent establishes a two-prong test for the retroactivity analysis and that the district court misapplied this precedent in analyzing the question of retroactivity based solely on the second prong of the test. It is for this reason that we quash the decision below.
 

 In
 
 Chase Federal,
 
 cited by FIGA for conflict, we made clear that two interrelated issues arise when the question of a statute’s retroactive application is before the Court — the court must first determine if there is “clear evidence of legislative intent to apply the statute retrospectively.”
 
 Chase Federal,
 
 737 So.2d at 499. Once the first inquiry is made, and only “[i]f the legislation clearly expresses an intent that it must apply retroactively, then the second inquiry is whether retroactive application is constitutionally permissible.”
 
 Id.
 
 (citing
 
 State Farm Mut. Auto. Ins. v. Laforet,
 
 658 So.2d 55, 61 (Fla.1995));
 
 see also Florida Hosp. Waterman, Inc. v. Buster,
 
 984 So.2d 478, 487 (Fla.2008) (“[A] retroac-tivity analysis is two-pronged, asking first if the relevant provision provides for retroactive application, and second if such application is constitutionally permissible.”).
 

 In
 
 Old Port Cove Holdings, Inc. v. Old Port Cove Condominium Ass’n One, Inc.,
 
 986 So.2d 1279 (Fla.2008), we again held that in determining if a statute is retroactive, two factors are to be considered.
 
 Id.
 
 at 1284. The first factor is whether the statute itself expresses an intent that it apply retroactively, and if so, the second factor is whether retroactive application is constitutional.
 
 Id.
 
 at 1284. We also made clear in
 
 Old Port Cove
 
 that if the plain language of the statute does not evince an intent that the statute apply retroactively, the Court “need not address the second prong.”
 
 Id.
 
 (citing
 
 Memorial Hosp.-W. Volusia, Inc. v. News-Journal Corp.,
 
 784 So.2d 438, 441 (Fla.2001)).
 

 The importance of legislative intent in the retroactivity analysis was evident as early as 1887 when this Court stated, “It is a rule of construction that a statute shall not be given a retrospective effect, unless its terms show clearly that such an effect was intended.”
 
 McCarthy v. Havis,
 
 23 Fla. 508, 2 So. 819, 821 (1887). In 1920, this Court again stated, “A statute is not to be given retrospective effect, unless its terms show clearly that such an effect was intended.”
 
 In re Seven Barrels of Wine,
 
 79 Fla. 1, 83 So. 627, 632 (1920). “The rule that statutes are not to be construed retrospectively, unless such construction was plainly intended by the Legislature, applies with peculiar force to those statutes the retrospective operation of which would impair or destroy vested rights.”
 
 Id.
 
 We further explained the general rule in
 
 La-foret,
 
 where we stated that “a substantive statute will not operate retrospectively absent clear legislative intent to the contrary, but ... a procedural or remedial statute is to operate retrospectively.”
 
 Laforet,
 
 658 So.2d at 61. However, we cautioned in
 
 Chase Federal
 
 that' “if a statute accomplishes a remedial purpose by creating new substantive rights or imposing new legal burdens, the presumption against retroactivity would still apply.”
 
 Chase Federal,
 
 737 So.2d at 500 n. 9.
 

 In the present case, the statute in effect in 2004 when the policy was issued did not deprive a commercial residential insurer of its contractual right to require an appraisal of a claimed loss; the statute did not affect commercial residential insurance policies in 2004. The 2005 amended statute extended its reach to commercial residential insurers, requiring them to pay
 
 *195
 
 the cost of mediation and imposing the notice requirement on them. The amendments further imposed a new penalty on both commercial residential insurers as well as homeowners’ residential insurers— the loss of the right to the contractual appraisal if the insurer fails to give notice of the mediation alternative. Thus, section 627.7015 as amended in 2005 cannot be characterized as simply procedural or remedial, but was clearly substantive. Therefore, the presumption against retroactive application of the substantive amendments to section 627.7015 applies in this case.
 

 The presumption against retroactive application is a well-established rule of statutory construction that is appropriate in the absence of an express statement of legislative intent because
 

 a presumption against retroactivity will generally coincide with legislative and public expectations. Requiring clear intent assures that [the legislature] itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits. Such a requirement allocates to [the legislature] responsibility for fundamental policy judgments concerning the proper temporal reach of statutes, and has the additional virtue of giving legislators a predictable background rule against which to legislate.
 

 Arrow Air, Inc. v. Walsh,
 
 645 So.2d 422, 425 (Fla.1994) (bracketed material in original) (quoting
 
 Landgraf v. USI Film Products,
 
 511 U.S. 244, 272-73, 114 S.Ct. 1488, 128 L.Ed.2d 229 (1994)). The presumption is rebutted by clear evidence of legislative intent.
 
 Chase Federal,
 
 737 So.2d at 500. Thus, we have consistently required the first prong of a retroactivity analysis to inquire into whether there is clear evidence of legislative intent.
 

 In a case decided after the Fourth District’s decision below,
 
 Menendez v. Progressive Express Insurance Co.,
 
 35 So.3d 873 (Fla.2010), we again set forth the two-prong test for retroactivity: “First, the Court must ascertain whether the Legislature intended for the statute to apply retroactively. Second, if such an intent is clearly expressed, the Court must determine whether retroactive application would violate any constitutional principles.”
 
 Id.
 
 at 877.
 
 [7]
 
 We determined in
 
 Menendez
 
 that the Legislature clearly intended that the amendment in that case, which imposed additional presuit notice requirements and made other changes affecting a preexisting contract of insurance, be applied retroactively.
 
 Id.
 
 at 876. However, because we also concluded in
 
 Menendez
 
 that the amendment was substantive and imposed penalties for noncompliance, we held that the statute could not be applied retroactively.
 
 Id.
 
 at 880.
 

 Devon contends that the two-prong test set forth in
 
 Old Port Cove, Chase Federal,
 
 and
 
 Menendez
 
 is not applicable in this case and that it was proper for the district court to look only at the question of whether retroactive application would be constitutional under the balancing test set forth in
 
 Pomponio.
 
 We reject this argument that
 
 Pomponio
 
 dispenses with the first prong of the test for retroactivity. Our controlling precedent has required, and still requires, that the court first determine if there is clear legislative intent for
 
 *196
 
 retroactive application of the statute. When we decided
 
 Pomponio,
 
 we had already ruled that the statute at issue was intended by the Legislature to be applied retroactively.
 
 See Pomponio,
 
 378 So.2d at 775 n. 3 (noting that the Court specifically held in
 
 Century Village, Inc. v. Wellington Condominium Ass’n,
 
 361 So.2d 128, 132 (Fla.1978), that the statute at issue “was intended by the Legislature to be applied retroactively”). For that reason, there was no need for the Court in
 
 Pomponio
 
 to again engage in an inquiry into whether the Legislature intended for the statute to be applied retroactively.
 

 Our precedent makes abundantly clear that in determining the question of retro-activity of a legislative enactment, the court must apply the two-prong test — beginning with a search for clear evidence of legislative intent for retroactivity. The Fourth District in the present case did not inquire into whether there existed clear legislative intent for retroactive application of the 2005 amendments contained in section 627.7015. Instead, the district court proceeded directly to the second inquiry concerning whether retroactive application would be constitutional. Because the first prong of the test for retroactivity requires the court to determine if there is clear legislative intent to apply the 2005 amendments to section 627.7015 retroactively, we examine that question next.
 

 In the present case, the text of the amendment itself is silent as to its forward or backward reach. However, the enacting law specifically states that the amendments to section 627.7015 are to be effective July 1, 2005.
 
 See
 
 ch.2005-111, § 15, at 1092, Laws of Fla. The Legislature also provided differing effective dates for various other sections contained in chapter 2005-111, thus indicating careful thought by the Legislature as to when the various amendments would be given effect.
 
 [8]
 
 We have noted that the Legislature’s inclusion of an effective date for an amendment is considered to be evidence rebutting intent for retroactive application of a law.
 
 See State Dep’t of Rev. v. Zuckerman-Vernon Corp.,
 
 354 So.2d 353, 358 (Fla.1977). Nevertheless, where there is “clearly expressed” legislative intent for retroactive application, there is no “unbending principle that the inclusion of an effective date in a statute will always supersede the clearly expressed legislative intent that the statute be applied retroactively.”
 
 Chase Federal,
 
 737 So.2d at 502. In the present case, however, we find no “clearly expressed legislative intent” to apply section 627.7015, as amended in 2005, retroactively.
 

 Devon contends that a review of chapter 2005-111, Laws of Florida, in its entirety indicates that the amendments to section 627.7015 are intended to be retroactive. Indeed, the Court may engage in statutory construction as part of the analysis to determine if the terms of the statute and the purpose of the enactment indicate retroactive application.
 
 Chase Federal,
 
 737 So.2d at 500 (holding that where there is no express legislative command that the statute is retroactive, “both the terms of the statute and the purpose of the enactment must be considered” in determining if the statute is retroactive);
 
 see
 
 
 *197
 

 also Fla. Hosp. Waterman, Inc.,
 
 984 So.2d at 488 (same). This examination may also include consideration of the language, structure, purpose, and legislative history of the enactment.
 
 See Chase Federal,
 
 737 So.2d at 500 (citing
 
 United States v. Olin Corp.,
 
 107 F.3d 1506, 1513 (11th Cir.1997)). However, we disagree with Devon that anything in the language, structure, purpose, or legislative history of chapter 2005-111 provides clear evidence of legislative intent to apply the 2005 amendments to section 627.7015 retroactively.
 

 Devon argues that intent for ret-roactivity is shown by the fact that nothing in the act states that the amendments to section 627.7015 are inapplicable to existing contracts. However, the
 
 absence
 
 of a statement in the act that the amendments are inapplicable to existing contracts does not constitute clear evidence of retroactive intent. Devon further points to the text of a different, unrelated section of chapter 2005-111, which amended section 627.711, Florida Statutes. That section states that its provisions are applicable to policies entered into or renewed on or after October 1, 2005.
 
 [9]
 
 Devon suggests that because the Legislature specifically spoke to prospective application of one section in chapter 2005-111, that the Legislature necessarily intended some or all of the other provisions in the amending act to be retroactive. This argument runs counter to case law that requires clear evidence of legislative intent for retroactive application of a statute. Based on our review of the language, structure, purpose, and legislative history of the enactment, we conclude that there is no clear evidence of legislative intent that the 2005 amendments to section 627.7015 are to be applied retroactively. Thus, the 2005 amendments may not be applied retroactively to the 2004 policy of insurance in this case to bar FIGA’s right to enforce the appraisal provision in that contract. Because we have reached this conclusion under prong one of the two-prong test, we need not address whether retroactive application of the amendments would be constitutional.
 
 See Old Port Cove,
 
 986 So.2d at 1284.
 

 CONCLUSION
 

 This Court’s precedents both before and after the Fourth District’s decision require the court to engage in a two-pronged inquiry to determine if the 2005 amendments to section 627.7016 are to be applied retroactively. Thus, the Fourth District misapplied this precedent when it omitted the first inquiry into whether the Legislature clearly expressed an intent that the statute be applied retroactively and moved directly to the second inquiry, whether retroactive application would be constitutional. For this reason, and because there is no clear evidence of legislative intent for ret-roactivity, we quash the decision of the Fourth District to the extent it is inconsistent with this opinion and remand for further proceedings.
 

 It is so ordered.
 

 CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, and PERRY, JJ., concur.
 

 [1]
 

 . Misapplication of our precedent provides a basis for express and direct conflict jurisdiction.
 
 See, e.g., Wallace v. Dean,
 
 3 So.3d 1035, 1040 (Fla.2009);
 
 Rosen v. Fla. Ins. Guar. Ass’n,
 
 802 So.2d 291, 292 (Fla.2001).
 

 [2]
 

 . The Florida Insurance Guaranty Act is found in sections 631.50-70, Florida Statutes (2010).
 

 [3]
 

 . Although appraisal provisions in insurance policies have often been treated as arbitration provisions,
 
 see, e.g., U.S. Fidelity & Guaranty Co. v. Romay,
 
 744 So.2d 467, 469 (Fla. 3d DCA 1999), we held in
 
 Allstate Insurance Co. v. Suarez,
 
 833 So.2d 762, 765 (Fla.2002), that an appraisal provision in an insurance contract is not an agreement to submit to formal arbitration proceedings under the Florida Arbitration Code. We have also held that the question of whether a claim is covered under the policy when the insurer denies coverage is to be determined by a court and not by the appraisal panel.
 
 See Johnson v. Nationwide Mut. Ins. Co., 828
 
 So.2d
 
 1021,
 
 1025-26 (Fla.2002).
 

 [4]
 

 . The Florida Insurance Code is contained in chapters 624-632, 634-636, 641-642, 648 and 651.
 
 See
 
 § 624.01, Fla. Stat. (2005).
 

 [5]
 

 . Homeowner’s residential policies and commercial residential policies, such as condominium association policies, are often addressed separately in the insurance code.
 
 See, e.g.,
 
 § 627.4025, Fla. Stat. (2010) (stating that residential coverage includes both personal lines residential coverage, such as that provided by homeowner's and similar policies, and commercial lines residential coverage, such as that provided by condominium association and similar policies). Section 631.54(5), Florida Statutes (2010), part of the FIGA act, also defines "homeowner's insurance" to exclude commercial policies such as those covering condominium associations or homeowners' associations.
 

 [6]
 

 .
 
 Pomponio v. Claridge of Pompano Condo., Inc.,
 
 378 So.2d 774, 780 (Fla.1979) (recognizing that "virtually” no degree of impairment will be tolerated, but allowing the court to consider the actual effect of the provision on the contract and to balance a party’s interest in not having the contract impaired against the State's source of authority and the evil sought to be remedied).
 

 [7]
 

 . We also made clear in
 
 Menendez
 
 that "[i]n our analysis, we look at the date the insurance policy was issued and not the date that the suit was filed or the accident occurred, because ‘the statute in effect at the time an insurance contract is executed governs substantive issues arising in connection with that contract.’ ”
 
 Menendez,
 
 35 So.3d at 876 (quoting
 
 Hassen v. State Farm Mut. Auto. Ins. Co.,
 
 674 So.2d 106, 108 (Fla.1996)).
 

 [8]
 

 . Section 30 of the act provided that unless otherwise specified, the act shall take effect upon becoming a law. The act was approved by the Governor and filed in the office of the Secretary of State on June 1, 2005.
 
 See
 
 ch.2005-111, §30, at 1103, Laws of Fla. However, several other sections of the act, in addition to section 15, contained specific effective dates.
 
 See, e.g.,
 
 ch.2005-111, § 2, at 1067 (effective July 1, 2005); § 11, at 1083 (effective January 1, 2006); § 12, at 1087 (effective October 1, 2005); and § 14, at 1090 (effective October 1, 2005).
 

 [9]
 

 . Ch.2005-111, § 22, at 1098, Laws of Fla.