DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**TERRY HUBBARD,**
Appellee.

No. 4D2022-3429

[July 17, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; George Odom, Judge; L.T. Case No. 22-8077CF10A.

Ashley Moody, Attorney General, Henry C. Whitaker, Solicitor General, Jeffrey Paul DeSousa, Chief Deputy Solicitor General, and Alison E. Preston, Assistant Solicitor General, Office of the Attorney General, Tallahassee, for appellant.

Craig Trocino, Coral Gables, and Michael Gottlieb of Michael Gottlieb, PA, Fort Lauderdale, for appellee.

Reid Levin of Reid Levin, PLLC, Boca Raton, Caitlin E. Olwell of Akin Gump Strauss Hauer & Feld LLP, New York, NY, and Steven H. Schulman of Akin Gump Strauss Hauer & Feld LLP, Dallas, TX, for Amicus Curiae Former Members of the Commission on the Statewide Prosecution Function.

Samuel G. Williamson and Thomas S.P. Geeker of Quinn Emanuel Urquhart & Sullivan, LLP, Miami, and Temi Omilabu of Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, for Amicus Curiae The Association of Prosecuting Attorneys.

M. Patrick Yingling of Reed Smith LLP, Chicago, IL, and Wesley A. Butensky of Reed Smith LLP, Miami, for Amicus Curiae Niskanen Center and former Florida State Senator Jeff Brandes.

Matthew Triggs of Proskauer Rose LLP, Boca Raton, for Amicus Curiae American Civil Liberties Union, Brennan Center for Justice, ACLU Foundation of Florida, and NAACP Legal Defense and Educational Fund.

Matthew R. Tuchman, Washington, DC, and Rachel R. Goldberg, Los Angeles, CA, for Amicus Curiae Due Process Institute.

Freddy Funes of Toth Funes PA, Miami, James C. Dugan of Willkie Farr & Gallagher LLP, New York, NY, and Quinn Yeargain of Widener Univ. Commonwealth Law School, Harrisburg, PA, for Amicus Curiae State Constitutional Law Scholars G. Alan Tarr, Robert F. Williams, and Quinn Yeargain.

KUNTZ, J.

The Office of the Statewide Prosecutor charged Terry Hubbard with false affirmation in connection with an election under section 104.011(1), Florida Statutes (2020), and voting by an unqualified elector under section 104.15, Florida Statutes (2020). Hubbard moved to dismiss the charges, arguing the OSP lacked authority to prosecute him under section 16.56, Florida Statutes (2022). The circuit court concluded Hubbard's actions did not affect two or more judicial circuits and dismissed the charges. The State appeals.

We first address whether the legislature's 2023 amendments to section 16.56 apply retroactively. Concluding the amendments apply retroactively, we proceed to apply the amended section 16.56 to the allegations in the charging document. On that question, we hold the allegations in the charging documents, if proven, fall within the amended section 16.56's scope. As a result, we reverse the circuit court's dismissal and remand for further proceedings.

*i. Background*

In 1989, Hubbard was convicted of violating section 794.011(2), Florida Statutes. Because of his convictions, Hubbard forfeited his right to vote under Article VI, Section 4 of the Florida Constitution.

In 2019, while Hubbard's rights were still forfeited, he completed a voter application form, listing his residence as Pompano Beach, Florida. As part of the application, he affirmed: "I affirm that I am not a convicted felon, or if I am, my right to vote has been restored." The application was transmitted to the Broward County Supervisor of Elections and was forwarded to the Florida Secretary of State in Leon County.

In 2020, Hubbard completed a second Florida voter application, which listed the same Pompano Beach address. Hubbard affirmed: "I have been convicted of a felony, I affirm my voting rights have been restored pursuant

2

to s. 4, Art. VI of the State Constitution upon the completion of all terms of my sentence, including parole or probation."

Based on the applications, Hubbard became a registered voter in Broward County. He received a voter registration card and voted by mail in Broward County's 2020 election cycle. Because of his participation in the 2020 election, OSP agents conducted a recorded interview in front of his residence regarding his voter registration and subsequent voting.

Hubbard was charged by amended information with providing false affirmation in connection with an application for voter registration in violation of section 104.011(1), and voting by an unqualified elector in violation of section 104.15. Hubbard pled not guilty.

Hubbard also moved to dismiss the amended information for lack of jurisdiction, arguing no multi-jurisdictional offense had occurred because all the alleged crimes had occurred in Broward County. The State moved to strike the motion to dismiss, arguing that the Secretary of State's participation in the approval process of a Florida voter application was a statutory matter. As such, the State argued, "it would be reasonably foreseeable to anyone who filled out such an application that it would automatically invoke the participation of a governmental entity in the Second Judicial Circuit."

Before a hearing on the motion to dismiss, the parties filed a joint stipulation agreeing to the following facts:

1. Defendant filled out a Florida Voter Registration Application in Broward County, Seventeenth Judicial Circuit on or about July 31, 2019 containing his name, date of birth, and listing his residence in Broward County.

2. That Florida Voter Registration Application was submitted by Defendant in the Seventeenth Judicial Circuit and transmitted to the Broward County Supervisor of Elections, also physically in the Seventeenth Judicial Circuit [on] August 7, 2019.

3. The Broward Supervisor of Elections forwarded information from Defendant's Florida Voter Application via internet to the Florida Secretary of State in Leon County, Second Judicial Circuit for review on August 8, 2019.

3

4. On August 9, 2019, after the Florida Secretary of State's review concluded, the Broward Supervisor of Elections issued Defendant a voter ID card with Voter ID Number XXXXXXXXX.

5. Defendant filled out a second Florida Voter Application in Broward County, Seventeenth Judicial Circuit on or about February 14, 2020, again containing his name, date of birth, and listing his residence in Broward County.

6. That Florida Voter Application was submitted by Defendant in the Seventeenth Judicial Circuit and was transmitted to the Broward County Supervisor of Elections on February 18, 2020. Information from this second Florida Voter Registration Application was not shared with the Florida Secretary of State in Leon County, Second Judicial Circuit.

7. On March 3, 2020, the Broward Supervisor of Elections issued Defendant a second voter ID card under the same voter ID Number: XXXXXXXXX.

8. Defendant voted by mail in the November 3, 2020 general election. That vote was mailed to the Broward County Supervisor of Elections in the Seventeenth Judicial Circuit.

9. Defendant's vote, along with all of the other votes from that precinct, were forwarded to the Florida Department of State's Division of Elections in Leon County, Second Judicial Circuit for the purposes of determining the outcome of the November 2020 election, which included candidates for statewide and federal offices.

10. At no point between on or about February 14, 2020 and on or about November 3, 2020 did Defendant physically enter the Second Judicial Circuit, nor did he himself mail or electronically transfer anything to the Second Judicial Circuit.

11. The acts charged in the State's Information did not involve a criminal conspiracy.

After a hearing, the circuit court found the "OSP does not have jurisdiction to investigate and prosecute the Defendant as part of a related transaction in two or more judicial circuits" and dismissed the charges against Hubbard.

4

### ii. Analysis

The State appeals the circuit court's order concluding that the OSP lacked jurisdiction to charge Hubbard. First, we address the applicability of the 2023 amendments to section 16.56. Second, we apply the amended section 16.56 to the amended information's allegations.

### a. The 2023 Amendments to Section 16.56 Apply to Hubbard

The OSP was created in the Florida Constitution. Article IV, section 4(b), gives the OSP concurrent jurisdiction with each state attorney to "prosecute violations of criminal laws occurring or having occurred, in two or more judicial circuits as part of a related transaction, or when any such offense is affecting or has affected two or more judicial circuits as provided by general law." Art. IV, § 4(b), Fla. Const.

The Florida Legislature's implementing legislation lists the types of crimes the OSP has the authority to investigate. *See* § 16.56, Fla. Stat. In 2022, section 16.56 provided, in part:

> (1) There is created in the Department of Legal Affairs an Office of Statewide Prosecution . . . The office may:
>
> (a) Investigate and prosecute the offenses of:
>
> . . .
>
> 13. Any crime involving voter registration, voting, or candidate or issue petition activities;
>
> . . .
>
> or any attempt, solicitation, or conspiracy to commit any of the crimes specifically enumerated above. *The office shall have such power only when any such offense is occurring, or has occurred, in two or more judicial circuits as part of a related transaction, or when any such offense is connected with an organized criminal conspiracy affecting two or more judicial circuits . . .*

§ 16.56(1)(a), Fla. Stat (2022) (emphasis added).

In 2023, the Legislature amended section 16.56, adding subsection (1)(c), which gives the OSP the authority to:

5

(c) Investigate and prosecute any crime involving:

1. Voting in an election in which a candidate for a federal or state office is on the ballot;

2. Voting in an election in which a referendum, an initiative, or an issue is on the ballot;

3. The petition activities of a candidate for a federal or state office;

4. The petition activities for a referendum, an initiative, or an issue; or

5. Voter registration;

or any attempt, solicitation, or conspiracy to commit any of the crimes specifically enumerated above. *The office shall have such power only when any such offense is occurring, or has occurred, in two or more judicial circuits as part of a related transaction, or when any such offense is affecting, or has affected, two or more judicial circuits.* Informations or indictments charging such offenses must contain general allegations stating the judicial circuits and counties in which crimes are alleged to have occurred or the judicial circuits and counties in which crimes are alleged to have affected.

§ 16.56(1)(c), Fla. Stat. (2023). The Governor signed the enacting bill into law on February 15, 2023, and the change took effect immediately. *See* Act effective February 15, 2023, Ch. 2023-2, Laws of Fla.

We must determine whether the 2023 amendments to section 16.56 apply to the charges against Hubbard. Generally, a statute is presumed to operate prospectively absent "clear evidence of legislative intent." *Fla. Ins. Guar. Ass'n, Inc. v. Devon Neighborhood Ass'n, Inc.*, 67 So. 3d 187, 195 (Fla. 2011) (citations omitted). This is because "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994).

"First, the Court must ascertain whether the Legislature intended for the statute to apply retroactively. Second, if such an intent is clearly expressed, the Court must determine whether retroactive application

would violate any constitutional principles.'" *Devon Neighborhood*, 67 So. 3d at 195 (quoting *Menendez v. Progressive Express Ins. Co.*, 35 So. 3d 873, 877 (Fla. 2010)).

In this case, the 2023 amendments to section 16.56 stated the law was effective immediately, which occurred when the Governor signed the legislation on February 15, 2023. *See* Act effective February 15, 2023, Ch. 2023-2, Laws of Fla. ("Section 2. This act shall take effect upon becoming a law."). The legislature did not expressly indicate an intent that the amendments apply retroactively.

But that does not end the inquiry, as "a substantive statute will not operate retrospectively absent clear legislative intent to the contrary, but . . . a procedural or remedial statute is to operate retrospectively." *Devon Neighborhood*, 67 So. 3d at 194 (quoting *State Farm Mut. Auto. Ins. v. Laforet*, 658 So. 2d 55, 61 (Fla. 1995)).

So, were the 2023 amendments to section 16.56 substantive or procedural? The Florida Supreme Court has explained that "substantive law is that which declares what acts are crimes and prescribes the punishment therefor, while procedural law is that which provides or regulates the steps by which one who violates a criminal statute is punished." *Love v. State*, 286 So. 3d 177, 185 (Fla. 2019) (quoting *State v. Garcia*, 229 So. 2d 236, 238 (Fla. 1969)); *see also Benyard v. Wainwright*, 322 So. 2d 473, 475 (Fla. 1975).

The 2023 amendments to section 16.56 do not expand or diminish Hubbard's rights. The amendments merely address whether the local prosecutor or the OSP has the authority to prosecute certain cases. Even Hubbard acknowledges that "the facts to sustain a conviction are identical, regardless of whether the prosecution is handled by Broward County or the OSP." Thus, the amendments do not impact elements of the offense or the punishment if convicted, but only which arm of the state conducts the prosecution.

As a result, we agree with the State that the 2023 amendments to section 16.56 are procedural and can be retroactively applied. We also conclude the amendments can be applied to this appeal because the amendments do not apply "new legal consequences to events completed before its enactment." *See Love*, 286 So. 3d at 187; *see also Hamdan v. Rumsfeld*, 548 U.S. 557, 576–77 (2006) (amendments impacting the tribunal of enforcement do not take away a substantive right); *United*

*States v. Alabama*, 362 U.S. 602, 604 (1960) (concluding "the case must be decided on the basis of law now controlling").[1]

### b. *The OSP Has the Authority to Prosecute Hubbard*

We are not determining whether Hubbard violated the law. Instead, we merely determine whether the OSP has the authority to prosecute him under the amended section 16.56. The amended section 16.56 allows the OSP to investigate and prosecute any crime involving "voting in an election in which a candidate for a federal or state office is on the ballot" and any crime involving "voter registration." § 16.56(1)(c)1., 5., Fla. Stat. (2023). The OSP has that power "only when any such offense is occurring, or has occurred, in two or more judicial circuits as part of a related transaction, or when any such offense is affecting, or has affected, two or more judicial circuits." § 16.56(1)(c), Fla. Stat. (2023).

Therefore, the OSP may exercise its authority where: (1) the offense occurred in two or more judicial circuits, or (2) the offense "is affecting, or has affected, two or more judicial circuits." *Id.*

The question we must answer is whether Hubbard's offense occurred in or affected two or more judicial circuits. The term "affect" is not defined in the statute. Black's Law Dictionary defines "affect" as "[m]ost generally, to produce an effect on; to influence in some way." *Affect, Black's Law Dictionary* (11th ed. 2019). And Merriam-Webster's Collegiate Dictionary defines "affect," in part, as "to produce a material influence on or alteration in." *Affect, Merriam-Webster's Collegiate Dictionary* (11th ed. 2020).

Hubbard submitted his voter application in Broward County, with knowledge that the application would be sent to the Department of State in Leon County for verification. He then voted in Broward County in an election that included candidates for state and federal offices. That vote was submitted to Leon County.

Not only did these actions occur in both Broward and Leon County, but voter fraud impacts the public's confidence in elections throughout the

---

[1] Further, section 775.022, Florida Statutes (2022), does not preclude retroactive application of the amendments to section 16.56. Section 775.022(3) precludes retroactive application of "a statute, whether substantive or procedural, dealing in any way with a crime or its punishment, defining a crime or a defense to a crime, or providing for the punishment of a crime." As noted, the 2023 amendments to section 16.56 impact the prosecuting authority but do not address a crime or the punishment of a crime.

state. *See Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021). Of course, the elections were also for statewide and federal offices. Naturally, the result of those elections impacts voters throughout the state.

More simply, submitting a fraudulent voter registration in Broward County is an act which requires subsequent involvement of the Secretary of State in Leon County. So too does voting in an election in Broward County. As a result, the OSP had the authority to charge Hubbard with these crimes.

### iii. Conclusion

The circuit court's order dismissing the charges against Hubbard is reversed, and the case is remanded for further proceedings.

*Reversed and remanded.*

DAMOORGIAN, J., concurs.
MAY, J., dissents with opinion.

MAY, J., dissenting.

I respectfully dissent. The issue here is the constitutional and statutory limitations on the reach of the Office of the Statewide Prosecutor ("OSP"). The majority decides the OSP can extend its reach farther than my reading of the Florida Constitution and applicable statutes allow. The history, purpose, and language of both the constitutional and statutory authority for the OSP leads me to but one conclusion: the OSP's reach does not extend to this single-circuit crime. For that reason, I dissent. I would affirm the trial court's decision to dismiss the charges.

Initially, I disagree with the majority that the 2023 amendment of section 16.56, Florida Statutes (2023), applies to this prosecution. Simply put, the State failed to preserve the issue: the State never raised the 2023 amendment nor the "affecting or has affected" language from the Florida Constitution in the trial court. *See Sunset Harbour Condo. Ass'n v. Robbins*, 914 So. 2d 925, 928 (Fla. 2005) ("We hold that Sunset Harbour waived any objection to the validity of the asserted affirmative defense because no objection was raised in either the trial court or the district court. As a general rule, it is not appropriate for a party to raise an issue for the first time on appeal."). Admittedly, the amended statute did not exist (1) when the offense took place, (2) when the State filed its Amended Information, and (3) when the trial court dismissed the case. But, similar

"affecting" language did exist in the constitution.  *See* Art. IV, § 4(b), Fla. Const. ("The statewide prosecutor shall have concurrent jurisdiction with the state attorneys to prosecute violations of criminal laws occurring or having occurred, in two or more judicial circuits as part of a related transaction, or when any such offense is **affecting** or **has affected** two or more judicial circuits as provided by general law." (emphasis added)).  The State's failure to raise the 2023 amendment or the "affecting or has affected" language from the Florida Constitution in the trial court precludes it from raising the retroactive application of the 2023 amendment here.  *See Orton v. State*, 212 So. 3d 377, 378–79 (Fla. 4th DCA 2017).[2]

As the majority notes, the OSP was established by article IV, section 4(b) of the Florida Constitution.  That section imbues the OSP with "concurrent jurisdiction with the state attorneys to prosecute violations of criminal laws occurring or having occurred, in **two or more judicial circuits** as part of a related transaction, or when any such offense is affecting or has affected two or more judicial circuits as provided by general law."  Art. IV, § 4(b), Fla. Const. (emphasis added).

The Florida Legislature implemented this constitutional provision by enacting section 16.56, Florida Statutes (2020),[3] which provided:

> (1) There is created in the Department of Legal Affairs an Office of Statewide Prosecution. . . .  The office may:
>
> (a)  Investigate and prosecute the offenses of:
>
> . . .
>
> 12. Any crime involving voter registration, voting, or candidate or issue petition activities;
>
> . . .
>
> or any attempt, solicitation, or conspiracy to commit any of the crimes specifically enumerated above.  The office shall

---

[2] The State argues in its Reply Brief that it requested this court to relinquish jurisdiction for the trial court to apply the 2023 amendment after it became effective, but we denied its request.  This is true, but that doesn't mean, as the State suggests, that we "signaled" we were "content to address the question for the first time on appeal."

[3] *See* ch. 85-179, § 1, Laws of Fla.

have such power only when any such offense is occurring, or has occurred, in **two or more judicial circuits** as part of a related transaction, or when any such offense is connected with an organized criminal conspiracy affecting **two or more judicial circuits**.

*Id.* (emphasis added).

The State's position is that the crimes involving voter registration and voting must necessarily occur in more than one judicial circuit because of the process used to register voters and certify statewide elections. That is, the defendant's act of applying for a voter's registration card in one judicial circuit necessarily occurs in two judicial circuits because verification of all eligibility criteria is undertaken by the Department of State in the Second Judicial Circuit.[4] The State also maintains the defendant's vote cast in the Seventeenth Circuit also occurred in two judicial circuits because the local election results were transmitted to the Division of Elections (within the Department of State) in the Second Circuit. I disagree with the State's reasoning.

The history, purpose, and intent of both the constitutional and statutory authority for the OSP do not support the State's position.

- ### *History, Purpose, Intent, and Constitutional Limitations*

The fact remains, as the amicus brief submitted by Members of the Commission on the Statewide Prosecution Function ("Commission") points out, the OSP was born out of a desire for the creation of a statewide agency to address the threat that organized criminal activity poses to the quality of life of the citizens of Florida. Fla. Exec. Order No. 84-150 (Aug. 8, 1984). Governor Robert Graham said that the OSP was created to "assume responsibility for cases with a statewide impact," and to deal with large-scale, statewide conspiracies that affect multiple jurisdictional circuits. Governor Robert Graham, Remarks Concerning the Statewide Prosecutor Amendment (Mar. 6, 1985); *see also* R. Scott Palmer & Barbara M. Linthicum, *The Statewide Prosecutor: A New Weapon Against Organized Crime,* 13 Fla. St. U. L. Rev. 653, 668–69 (1985). The offense alleged here simply is not one of them.

---

[4] Of course, if the voter registration or voting takes place in the Second Judicial Circuit, only one judicial circuit would be involved, and there would be no OSP jurisdiction.

During the incubation period of the constitutional and statutory authority for the OSP, there were expressed concerns that the OSP "could be used to harass political enemies and centralize prosecutorial authority away from local elected state attorneys . . . ." Brief for Former Members of the Commission on the Statewide Prosecution Function as Amici Curiae supporting Appellee at 15. For this very reason, the Commission and the legislature narrowly tailored the OSP's jurisdiction.

After the OSP was created, it historically focused its efforts on investigating and prosecuting crimes involving organized medical fraud, organized elder fraud, organized public assistance fraud, gang violence, organized retail theft, cargo theft, human trafficking, drug trafficking, and white-collar crime. *Id.* at 26. (citing Fla. Off. of the Att'y Gen., *Office of Statewide Prosecution: 2023 Annual Report*, https://www.myfloridalegal.com/sites/default/files/2023-osp-annual-report_final-2.27.24.pdf (last visited July 1, 2024)).

Yet, the OSP now seeks to extend its reach into the local discretion afforded the Office of the State Attorney for single judicial circuit crimes. The OSP is not some Marvel superhero that can magically extend its long arm of the law into a single judicial circuit and steamroll over the local state attorney. In short, this is a stretch the majority is willing to condone, but I am not.

Indeed, our Florida Constitution and statutes specifically limit the OSP's reach. *See* Art. IV, § 4(b), Fla. Const.; § 16.56, Fla. Stat. (2020). Here, it is undisputed the defendant applied to vote in one judicial circuit and voted in the very same single judicial circuit. The defendant's actions took place only in one judicial circuit. The State stipulated to these facts, and that the defendant took no action in any other judicial circuit. That, short and simple, is a single-circuit offense. To view it otherwise, as the OSP requests, is to expand the OSP's reach beyond its constitutional and statutory limits.

To follow the OSP's logic to its full extent, any act committed in a single judicial circuit that involves licensing in the Second Judicial Circuit would necessarily fall within the grasp of the OSP's overreaching arm. Crimes such as driving with a suspended driver's license, or violation of a state-issued license or state agency regulation would all transform a single judicial circuit offense into one that the OSP could prosecute. That cannot be supported by either the constitution or the enabling legislation. Nor should the OSP be able to cherry-pick when it can prosecute a single-circuit crime.

12

- ***Prosecutorial Independence***

Let's be clear, we are looking at two significant constitutional and statutory creatures: (1) local state attorneys; and (2) the OSP. Each evolved from specific needs and were designed to serve specific purposes. One should not be sacrificed or usurped by the other. Each should operate within its own constitutional and statutory authority.

Prior to the creation of the OSP, in 1972, Floridians voted to consolidate prosecutorial power solely in locally elected state attorneys and amended the Florida Constitution to do so. *See* Art. V, § 17, Fla. Const. Each state attorney is the prosecuting officer of all the trial courts in their circuit. *Id.* On the other hand, the OSP has limited concurrent jurisdiction, which requires the crime be one enumerated by the enabling statute and must occur "in two or more judicial circuits as part of a related transaction." *See* § 16.56(1)(a), Fla. Stat. (2020).

It was not until many years later that the OSP was created. *See* Art. IV, § 4, Fla. Const.; Palmer & Linthicum, *supra*, at 669–75 (detailing the legislative history of the creation of the OSP). Even then, it was given only "concurrent jurisdiction" in limited circumstances. *See* § 16.56(1)(a), Fla. Stat. (2020). The OSP was never given the broad prosecutorial discretion afforded the local state attorneys for single judicial circuit crimes. *Compare* Art. V, § 17, Fla. Const., *with* § 16.56(1)(a), Fla. Stat. (2020). And it was given only "concurrent" jurisdiction for those crimes occurring in two or more judicial circuits. Neither the legislature nor the OSP can usurp the independence of the local state attorneys to prosecute single-circuit crimes.

One need only follow a simple logical syllogism: (1) The OSP was created to prosecute multi-judicial circuit crimes. (2) The Information does not allege a multi-judicial circuit crime. (3) The OSP does not have jurisdiction to prosecute the defendant for these charges.

I would affirm the order dismissing the charges.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

13