[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-12706

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 18, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00324-CV-ORL-31-UAM

CNL HOTELS & RESORTS, INC.,
a Maryland Corporation,

Plaintiff-Counter
Defendant-Appellant,

versus

TWIN CITY FIRE INSURANCE COMPANY,
a Connecticut Corporation,

Defendant-Counter
Claimant-Appellee.

HOUSTON CASUALTY COMPANY,
a Texas Corporation,
LANDMARK AMERICAN INSURANCE COMPANY,
an Oklahoma Corporation,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(August 18, 2008)**

Before BIRCH, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

CNL Hotels and Resorts appeals two summary judgments in favor of Houston Casualty Company and Landmark American Insurance Company. CNL argues that the district court erred when it concluded that various payments CNL made were not covered under the insurance policies issued by Houston and Landmark. We affirm in part and reverse and remand in part.

## I. BACKGROUND

CNL was incorporated in 1996 and was managed by CNL Hospitality Corporation. CNL raised 3.1 billion dollars in capital between 1996 and 2004 by selling shares directly to the public at a split-adjusted cost of $20 a share. CNL was a public corporation subject to federal securities laws, but it was not listed on a national stock exchange. Under the terms of its corporate charter, CNL either had to list its shares on a national stock exchange or liquidate its assets and distribute the proceeds to its shareholders by December 31, 2007.

On April 30, 2004, CNL announced that it would be beneficial to become self-advised. CNL obtained shareholder approval through a proxy statement dated June 21, 2004, of a merger between Hospitality and a wholly-owned subsidiary of CNL. Under the terms of the merger, CNL, through its subsidiary, would pay 308

2

million dollars for all of the outstanding shares of Hospitality. On July 30, 2004, Green Street Advisors issued a report that suggested that CNL was worth approximately $12 a share.

After the Green Street report, consolidated lawsuits involving two classes of plaintiffs were filed against CNL. The Purchaser Class, composed of shareholders of CNL, sought a refund of $8 to compensate them for the difference between the price that they paid for the stock and the price at which Green Street valued the stock. The Purchaser Class relied on section 11 of the Securities Act of 1933. 15 U.S.C. §77k. The Proxy Class, composed of shareholders of CNL that relied on the proxy statement to approve the merger, alleged that the proxy statement was misleading and the 308 million dollar purchase price of Hospitality was excessive.

CNL reached a settlement with both classes. CNL agreed to pay 35 million dollars to the Purchaser Class to settle their complaint. CNL settled with the Proxy Class by restructuring the merger between CNL and Hospitality. The restructuring lowered the fees owed by CNL to Hospitality and CNL paid the counsel for the Proxy Class 5.5 million dollars.

CNL sought reimbursement for its expenses related to this litigation from its several insurance carriers based on policies of CNL that covered directors' and officers' liability. Twin City Fire Insurance Company issued the primary policy of

3

CNL, which was limited to 10 million dollars and included a self-insured retention of $500,000. Houston issued a policy with a limit of 10 million dollars that provided coverage after the Twin City policy was exhausted. Landmark issued another policy with a limit of 10 million dollars that provided coverage after both the Twin City and Houston policies were exhausted. The policies issued by Houston and Landmark were "follow-form" policies and provided coverage identical to the Twin City policy.

CNL filed this action against Twin City, Houston, and Landmark after Twin City reserved its right to deny coverage of both the payment of 35 million dollars to the Purchaser Class and the payment of 5.5 million dollars to the counsel for the Proxy Class. Twin City and CNL settled their dispute for 9.5 million dollars. The settlement agreement allocated 3.3 million dollars for the defense costs of CNL; $700,000 for reimbursement of the payment to the Purchaser Class; and 5.5 million dollars for the payment of the counsel for the Proxy Class. CNL continued to prosecute this action against Houston and Landmark for reimbursement for the balance of the payment of the Purchaser Class and 5.5 million dollars in defense costs.

The district court resolved several motions for summary judgment in favor of Houston and Landmark. The district court granted summary judgment to both

4

Houston and Landmark regarding liability for the payment to the Purchaser Class, and the district court granted summary judgment to Houston regarding the 5.5 million dollars in defense costs paid by CNL.

## II. STANDARD OF REVIEW

We review a summary judgment <u>de novo</u>. <u>Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co.</u>, 508 F.3d 1337, 1341 (11th Cir. 2007).

## III. DISCUSSION

We evaluate the arguments of CNL in two parts. First, we consider whether the payment to the Purchaser Class was covered by the Twin City policy. Second, we consider whether the payment to the counsel for the Proxy Class was covered by the Twin City policy.

*A. The Payment to the Purchaser Class Was Not a Loss Covered By the Twin City Policy.*

CNL argues that the payment to the Purchaser Class was a loss covered by the Twin City policy instead of the return of money wrongly-acquired by CNL. CNL argues that the record does not support the conclusion that the money was wrongly-acquired, section 11 of the Securities Act of 1933 does not provide for restitutionary damages, and the settlement agreement between the Purchaser Class and CNL explicitly stated that the payment was not restitutionary. These arguments fail.

5

We agree with the district court that the payment to the Purchaser Class is not covered by the Twin City policy. The policy covers a "loss" that the insured is obligated to pay. "The interpretive principle . . . that a 'loss' within the meaning of an insurance contract does not include the restoration of ill-gotten gains—is clearly right." Level 3 Commc'ns, Inc. v. Fed. Ins. Co., 272 F.3d 908, 910 (7th Cir. 2001). Because we conclude that the payment to the Purchaser Class was restitutionary in nature, the payment was not a loss covered by the Twin City policy. Houston and Landmark are not liable for that payment.

The argument of CNL that there is "no basis in the record of the [action between CNL and the Purchaser Class] to support the notion that the plaintiffs' claims were for the return of ill-gotten gains" is based on the premise that the Purchaser Class did not attempt to prove and Section 11 does not require proof of fraud. CNL contends that, without a finding of fraud, it is impossible to conclude that the money was wrongly-acquired. This argument misunderstands the idea of restitution.

The return of money received through a violation of law, even if the actions of the recipient were innocent, constitutes a restitutionary payment, not a "loss." It is immaterial whether CNL committed fraud. CNL received money directly from the Purchaser Class through the sale of shares, and CNL returned some of the

6

money after the Purchaser Class alleged that the sale of shares by CNL violated the law.

The record supports the conclusion that the payment to the Purchaser Class was the return of money that CNL acquired in violation of law. CNL does not dispute that the Purchaser Class alleged that it purchased shares from CNL for $20 a share when the shares were actually worth only $12 a share. CNL benefitted directly from this alleged violation of section 11 and returned some of this benefit to the Purchaser Class through a settlement. CNL instead argues that, under section 11, damages can never be restitutionary.

CNL argues that damages under section 11 cannot be restitutionary because the amount of damages permitted by statute focuses on the loss suffered by the plaintiff instead of the gain of the defendant. Section 11 provides for an award of damages when a registration statement contains an "untrue statement of material fact or omitted to state a material fact required to be stated." 15 U.S.C. § 77k(a). Damages are measured under section 11 by the difference between the price the plaintiff paid for the security and the value of the security when the suit was brought. 15 U.S.C. §77k(e).

The argument of CNL fails. CNL is correct that the measure of damages under section 11 is concerned with the loss to the plaintiff, but in this appeal the

loss to the plaintiff is equal to the gain of the defendant. Section 11 does not preclude restitutionary relief.

CNL also contends that the payment to the Purchaser Class was not restitutionary because the settlement agreement states that the payment was not "restitution or disgorgement." The agreement between CNL and the Purchaser Class is not binding on any third party or this Court. The policy, not the settlement agreement, governs our resolution of this appeal. We agree with the district court that this argument is "too lacking in merit to warrant discussion."

*B. The Payment to the Counsel for the Proxy Class May Be Covered Under the Twin City Policy.*

The district court granted Houston summary judgment on the ground that the 5.5 million dollars in legal fees paid to the counsel for the Proxy Class was not covered under the Twin City policy. The policy issued by Houston covers only a "loss" not paid by Twin City because of the exhaustion of the limits of the underlying policy:

> This Policy does not provide coverage for any Loss not covered by the Underlying Policies except and to the extent that such Loss is not paid under the Underlying Policies solely by reason of the reduction or exhaustion of the Underlying Limit(s) of Liability through actual payments of Loss thereunder.

The district court interpreted the underlying policy as not covering the loss. The district court relied on Endorsement 17 of the Twin City policy, which exempts

8

from the definition of "loss" payments to the counsel for plaintiffs in a lawsuit about the price paid for corporate ownership:

> In the event of a Claim alleging that the price or consideration paid or proposed to be paid in any transaction involving all or substantially all the ownership interest in or assets of an entity is inadequate or excessive, Loss with respect to such Claim shall not include . . . any plaintiff's counsel fees and costs arising out of such Claim; provided, however, that this paragraph shall not apply to Claims Expenses incurred in the defense or appeal of such Claim.

Because the payment of 5.5 million dollars to the counsel for the Proxy Class was not a covered loss and CNL had not exhausted the limit of 10 million dollars of the Twin City policy, the district court concluded that Houston was not liable for any other loss.

CNL presents two arguments that the district court erred when it concluded that Endorsement 17 removed the payment to the counsel for the Proxy Class from the definition of loss in the Twin City policy. CNL argues that the payment was a covered loss under the Twin City policy because the settlement agreement between CNL and Twin City allocated 5.5 million dollars for the payment. CNL argues that, even if the payment is not a "loss" under Endorsement 17, the endorsement is void because neither Houston nor Twin City complied with Florida insurance law. We reject the first argument of CNL, but conclude that the second argument may have merit.

9

CNL argues that, because the settlement agreement allocated 5.5 million dollars to the payment to the counsel for the Proxy Class, that payment is a covered loss under the Twin City policy. We disagree. The agreement between CNL and Twin City is not binding on a third party or this Court. Whether the payment to the counsel for the Proxy Class is a covered "loss" under the Twin City policy depends on the language of the policy, not the settlement agreement. The language of Endorsement 17 clearly removes the payment from the definition of "loss" under the Twin City policy.

Although Endorsement 17 would remove the payment from the definition of "loss," that endorsement may be void. Florida law requires the filling with and approval of certain forms by the Office of Insurance Regulation before the forms can be used in insurance policies in Florida. Fla. Stat. § 627.410(1). If a form is not filed with the Office, the form is void. Am. Mut. Fire Ins. Co. v. Illingworth, 213 So. 2d 747, 749 (Fla. Dist. Ct. App. 1968).

The district court declined to resolve factual questions regarding whether Endorsement 17 was filed with the Office of Insurance Regulation because the court concluded that Endorsement 17 was exempt from filing. The court interpreted section 627.021(2)(e) of the Florida statutes, which states that "[t]his chapter does not apply to: . . . (e) Surplus lines insurance," Fla. Stat. § 627.021(2),

10

as exempting surplus lines insurance from the filing requirements of section 627.410(1). The Supreme Court of Florida recently rejected that interpretation. Essex Ins. Co. v. Zota, No. SC06-2031, slip op. 1 (Fla. June 26, 2008).

The exemptions of section 627.021 only apply to part 1 of chapter 627. Essex, No. SC06-2031, at 7. In Essex, the Supreme Court of Florida answered a question certified by this Court regarding the applicability of section 627.428 to surplus lines insurance. Essex Ins. Co. v. Zota, 466 F.3d 981, 988–90 (11th Cir. 2006). The Supreme Court of Florida stated that it had "previously held that-under a full statutory analysis-section 627.021(2) applies exclusively to part I of chapter 627." Essex, No. SC06-2031, at 7 (citing Nat'l Corp. Venezolana v. M/V Manaure V., 511 So. 2d 968, 970–71 (Fla. 1987)). The decision of the Supreme Court of Florida compels our conclusion that section 627.410(1), which is in part II of chapter 627, applies to surplus lines insurance. The district court erred, and a remand is necessary to determine whether Endorsement 17 is void.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Houston and Landmark concerning the payment to the Purchaser Class. We **REVERSE** the summary judgment in favor of Houston concerning the payment to the counsel for the Proxy Class, and we **REMAND** for further proceedings.

**AFFIRMED in part**, **REVERSED in part**, **and REMANDED**.

11