NORTHCUTT, Judge.
Essex Insurance Company filed an action seeking a declaration that it was not obligated to defend or indemnify the defendants in a wrongful death suit. The circuit court entered a final summary judgment ruling that Essex was contractually bound to defend and to indemnify them. We reverse the summary judgment and remand for additional proceedings consistent with this opinion.
The wrongful death action was brought by Erica Wiggins, the personal representative of the Estate of Diane Yeager-Lombard, against Integrated Drainage Solutions, Inc. (IDS); Verizon Communications, Inc., Verizon Services Corporation, Verizon Florida LLC (collectively *949 iCVerizon”); Mastec, Inc.; and Mastec North America, Inc. (collectively “Mas-tec”). The underlying facts were that Verizon contracted with Mastec, and Mas-tec subcontracted with IDS, to lay fiber optic cable in Pasco County. An IDS employee, Justo Arturo Moreno-Gonzales, met Ms. Yeager-Lombard while he was laying cable on land adjacent to her property. Moreno-Gonzales became romantically infatuated with Ms. Yeager-Lombard, but she repeatedly told him that his feelings were not reciprocated. She finally demanded that he cease entering her property. Moreno-Gonzales became verbally abusive. He obtained her telephone number and began harassing her by telephone. Ms. Yeager-Lombard complained to the police. Two days later, on May 3, 2008, Morales-Gonzalez shot her to death.
Ms. Yeager-Lombard’s personal representative filed suit against Verizon, Mas-tec, and IDS. The complaint alleged the following theories against the defendants: Verizon — negligent hiring and retention; negligent selection and employment of a contractor; negligent supervision of a contractor; and vicarious liability for a contractor’s negligence; Mastec — negligent hiring and retention; negligent selection and employment of a contractor; negligent supervision of a contractor; and vicarious liability for a contractor’s negligence; IDS — negligent hiring; negligent retention; respondeat superior for the negligence of others.
In March 2008, Essex had issued a commercial general liability policy to IDS, as the named insured. Mastec North America was an additional insured on the policy. The policy provided coverage for certain occurrences, including losses related to bodily injury. The defendants in the wrongful death action demanded that Essex provide a defense and indemnify them for any damages awarded.
In October 2010, Essex filed its declaratory judgment action contending that it was not obligated to defend or indemnify the defendants. It relied on the following exclusions from coverage contained in the policy’s combination general endorsement:
VII. This insurance does not apply to “bodily injury”, “property damage”, “advertising injury” or any injury, loss, or damages, including consequential injury, loss or damage, arising out of, caused or contributed to by:
[[Image here]]
C. ' alleged negligence or other wrongdoing in the hiring, training, placement, supervision, or monitoring of others by .insured.
[[Image here]]
F. criminal, fraudulent, dishonest or malicious acts or omissions from any insured, any employee of any insured or anyone for whom you may be held liable.
VIII.' Where there is no coverage under this policy, there is no duty to defend.
Verizon and Mastec filed affirmative defenses and a counterclaim for declaratory relief, against Essex, alleging that the above-quoted exclusions were unenforceable because Essex had not complied with two Florida statutes: the defendants pointed out that Essex had failed to file and obtain preapproval of the combination general endorsement as required by section 627.410, Florida Statutes (2008), and they alleged that Essex had failed to comply with Florida’s claims administration statute, section 627.426. Verizon and Mas-tec also asserted that the exclusions did not apply to the claims for negligent retention, negligent selection and employment, negligent failure to warn, and vicarious liability. The parties subsequently filed cross-motions for summary judgment.
*950 At the hearing on the motions and in their memoranda, the parties focused on Verizon’s and Mastec’s defense that Essex had not complied with section 627.410.[1] Essex argued that because it was a surplus lines carrier,[2] see § 626.913, Fla. Stat. (2008), it was exempt from the filing and approval requirements of section 627.410. It pointed out that in 2009, the Florida legislature amended section 626.913 to expressly declare that the provisions in chapter 627 did not apply to surplus lines carriers. § 626.913(4), Fla. Stat. (2009). Further, the enacting legislation stated that “[t]he amendments to s. 626.913, Florida Statutes, in this act are remedial in nature and operate retroactively to the regulation of surplus lines insurers from October 1, 1988, except with respect to lawsuits that are filed on or before May 15, 2009.”[3] Ch. 09-166, § 7, at 1733, Laws of Fla. As mentioned, the circuit court granted summary judgment to the defendants.
We review a summary judgment de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126 (Fla.2000). Here, the circuit court ruled against Essex on two bases. First, it found that the retroactivity language in chapter 2009-166 was effectively repealed because it was not included in the codified version of the 2010 statute. Second, it decided that even if the retroactivity language had not been repealed, application of the 2009 amendment would impair the insureds’ vested rights and, therefore, would be unconstitutional. We disagree with both rationales.
Retroactivity
In June 2008, the Florida Supreme Court issued Essex Insurance Co. v. Zota, 985 So.2d 1036 (Fla.2008). The court opined that section 627.021(2)(e), Florida Statutes (2003), which stated that “[t]his chapter does not apply to: ... [sjurplus lines insurance placed under the provisions of ss. 626.913-626.937,” only implicated part one of the insurance code, i.e., sections 627.011-627.381. Accordingly, it held that the balance of chapter 627 did apply to surplus lines carriers. Id. at 1044. Zota was followed in August 2008 by an Eleventh Circuit decision, CNL Hotels & Resorts. Inc. v. Twin City Fire Insurance Co., 291 Fed.Appx. 220 (11th Cir.2008), which addressed section 627.410, the filing requirements statute at issue here. The CNL court relied on Zota and concluded that section 627.410 applied to surplus lines carriers.
At its next regular session, the Florida legislature responded to these two decisions by enacting section 626.913(4), Florida Statutes (2009). A staff analysis for the committee substitute for Senate bill 1894 cast light on the intent behind the legislation. It stated:
Historically, surplus lines insurers have not been subject to the insurance regulatory requirements in ch. 627, F.S., as authorized insurers due to a specific exemption provision for surplus lines under [ section 627.021(2) ]. Furthermore, the Office of Insurance Regulation (OIR) has never regulated surplus lines *951 insurers as to rate, form, or other requirements under ch. 627, F.S. However, two recent rulings by the Florida Supreme Court [Zota] and a federal appellate court [CNL ] have altered the manner in which surplus lines insurers have historically been regulated. Essentially, these rulings require that surplus lines policy forms must now be filed, reviewed, and approved by the OIR under part II of ch. 627, F.S., which has never before been a requirement for these carriers.
The bill responds to these court decisions by clarifying that the form filing and other provisions of ch. 627, F.S., except where specifically stated, do not apply to surplus lines insurance.
[[Image here]]
[T]he legislation provides that the provisions of the bill will operate retroactively to October 1,1988, the effective date of a law enacted in 1988 adding the surplus lines exemption to [section 627.021], Thus, the bill exempts surplus lines insurance from the provisions of ch. 627, F.S., from October 1, 1988, to present.
Fla. S. Comm, on Judiciary, CS for SB 1894 (2009) Staff Analysis 1-2 (Apr. 2, 2009) (on file with the committee) (footnotes omitted). The retroactivity language discussed in this analysis appeared in chapter 2009-166, section 7, Laws of Florida. But in the 2009 Florida Statutes, it was relegated to a footnote to the amended statute. See § 626.913 n. 1, Fla. Stat. (2009).
A statute is presumed not to have retroactive application, but the presumption is rebuttable by clear evidence that the legislature intended that the statute be applied retroactively. Fla. Ins. Guar. Ass’n v. Devon Neighborhood Ass’n, 67 So.3d 187, 195 (Fla.2011). Thus, under the Florida Supreme Court’s two-prong test for retroactivity: “First, the Court must ascertain whether the Legislature intended for the statute to apply retroactively. Second, if such an intent is clearly expressed, the Court must determine whether retroactive application would violate any constitutional principles.” Menendez v. Progressive Express Ins. Co., 35 So.3d 873, 877 (Fla.2010).
In this case, as in Devon, the published text of the amended statute itself does not contain a provision addressing retroactivity. However, like the Devon court, we have looked to the enacting law to ascertain the legislature’s intent. See 67 So.3d at 196; see also State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55, 61 (Fla.1995) (noting that the statute at issue did not contain a retroactivity statement, but citing the enacting law for the proposition that “the Legislature has expressly stated that section 627,727(10) is remedial and is to be applied retroactively”). That law, chapter 2009-166, section 7, specifically declares that “[t]he amendments to s.626.913, Florida Statutes, in this act are remedial in nature and operate retroactively to the regulation of surplus lines insurers from October 1,1988.” A more clear expression of legislative intent could hardly be found. Thus,- the first prong of the retroactivity test has been met.
The second prong of the test requires us to consider whether retroactive application of the statute would violate constitutional principles. Even when the legislature has clearly expressed its intention that the statute be given a retroactive application, courts must refuse to do so' if it “impairs vested rights, creates new obligations, or imposes new penalties.” Lafor-et, 658 So.2d at 61. The appellees here maintain that retroactive application of section 626.913 would impair their vested rights to have policy terms preapproved by the Office of Insurance Regulation. See § 627.410. But at the time the policy was *952 issued, March 2008, the OIR was not regulating the forms used by surplus lines insurers. See Staff Analysis, supra. Thus any such right, if there was one, did not spring into being until the supreme court issued its Zota decision on June 26, 2008, well after the effective date of the policy. As to this particular policy, no right to OIR review existed at the time of its issuance.
When the legislature amends a statute shortly after controversy has arisen over its interpretation, the amendment can be considered an interpretation of the original law, not a substantive change. See Metro. Dade Cnty. v. Chase Fed. Hous. Corp., 737 So.2d 494, 503 (Fla.1999). Here, the legislature did just that. Following the Zota and CNL decisions, it quickly amended the statutes and, by providing that the amended provisions apply retroactively, it clarified that it had intended since 1988 that chapter 627 did not apply to surplus lines carriers.
Moreover, even if Essex had been required to present the exclusions for OIR’s review, its failure to do so would not be cause for voiding them. In QBE Insurance Corp. v. Chalfonte Condominium, Apartment Association, 94 So.3d 541, 545 (Fla.2012), our supreme court was presented with the following certified question: “Does an insurer’s failure to comply with the language and type-size requirements established by Fla. Stat. § 627.701(4)(a) render a noncompliant hurricane deductible provision in an insurance policy void and unenforceable?” It answered that question in the negative, in part because voiding the deductible provision in the policy would alter the terms of the insurance contract. The parties had bargained for the coverage and the deductible, and the premiums were set based on that bargain. Id. at 554.
Voiding the exclusions at issue in this case would have the exact effect discussed in Chalfonte. “Voidance of exclusion to an insurance policy is a severe penalty which alters the very terms of the deal between the parties. It requires the insurer to provide coverage for uncontracted risk, coverage for which the insured has not paid.” Id. (quoting Fed. Deposit Ins. Corp. v. Am. Cas. Co. of Reading, Pa., 975 F.2d 677, 683 (10th Cir.1992)).
In arriving at its decision on this point, the Chalfonte court also relied on Essex Insurance Co. v. Zota, 607 F.Supp.2d 1340, 1351 (S.D.Fla.2009), the federal case that had originally posed the question answered in our supreme court’s Zota decision. After the certified question had been answered, i.e., whether chapter 627 applied to surplus lines carriers, the court was faced with the question of whether an exclusion in the Essex policy should be voided because the insurer did not have OIR approval. The Southern District held that voiding the exclusion and allowing the rest of the policy to remain in force would raise constitutional concerns. Id. at 1350-51 (citing AIU Ins. Co. v. Block Marina Inv., Inc., 544 So.2d 998, 1000 (Fla.1989)). It held that the exclusion was valid notwithstanding Essex’s failure to comply with chapter 627.[4] Id. at 1352. For these reasons, we hold that Verizon and Mastec have not shown a constitutional violation that would prevent section 626.913 from being retroactively applied.
In sum, we hold that: (I) the 2009 amendment to section 626.913 applies retroactively; (II) such retroactive application is not unconstitutional; and (III) fail *953 ure to comply with section 627.410 does not invalidate the policy exclusions. We reverse the summary judgment entered in this case and remand to the circuit court for further proceedings in accordance herewith.
Application of the Policy Exclusions
The remaining issue in this case is whether the exclusions contained in the policy’s combination general endorsement apply to the claims asserted in the underlying wrongful death suit. Essex asks us to rule in its favor on that point as well. However, although the parties addressed that issue in their cross-motions for summary judgment, the circuit court did not decide it. Accordingly, we decline to resolve this issue, and we leave it for the circuit court to address on remand.
Reversed and remanded.
VILLANTI and KHOUZAM, JJ., Concur.

. Section 627.426 was not specifically addressed, but as will become clear, our decision in this case applies equally to that statutory provision.

. Surplus lines insurance is an alternative product that can be purchased from insurers not authorized to do business in Florida when the coverage sought is not available from authorized insurers. § 626.915, Fla. Stat. (2008).

.The parties do not dispute that the complaints involved in this case, in the underlying suit by the personal representative and in Essex’s suit for declaratory relief, were filed after May 15, 2009.

. The court in that case also found that Essex was not entitled to rescind the policy, a theory not asserted here.