TWIN CITY FIRE INSURANCE
COMPANY, Plaintiff/Counter–
Defendant,

v.

CR TECHNOLOGIES, INC., Defen-
dant/Counterclaimant/Third–
Party Plaintiff,

v.

Hartford Fire Insurance Company,
Third–Party Defendant.

Case No. 9:13–CV–80998.

United States District Court,
S.D. Florida.

Signed March 11, 2015.

Sina Bahadoran, Michele Aimee Vargas, Hinshaw & Culbertson LLP, Miami, FL, for Plaintiff/Counter–Defendant.

Jose D. Sosa, Convergent Litigation Associates, LLC, Kevin Charles Smith, Lytal Reiter Clark Fountain & Williams, West Palm Beach, FL, for Defendant/Counter-claimant/Third–Party Plaintiff. ·

Sina Bahadoran, Michele Aimee Vargas, Hinshaw & Culbertson LLP, Miami, FL, for Third–Party Defendant.

*ORDER DENYING CR TECHNOLOGIES, INC.'S MOTION FOR SUMMARY JUDGMENT AND GRANTING TWIN CITY FIRE INSURANCE COMPANY'S AND HARTFORD FIRE INSURANCE COMPANY'S MOTION FOR FINAL SUMMARY JUDGMENT*

ROBIN L. ROSENBERG, District Judge.

**THIS CAUSE** is before the Court upon Defendant and Third Party Plaintiff, CR Technologies, Inc.'s, Motion for Summary Judgment [DE 82] and upon Twin City Fire Insurance Company's and Hartford Fire Insurance Company's Motion for Final Summary Judgment and Incorporated Memorandum of Law [DE 84–1] (the "Motions"), both filed December 22, 2014. The Court held a hearing on the Motions on March 10, 2015. The Court has carefully considered the Motions and the parties' respective responses in opposition to and replies in support of the Motions, and is otherwise fully advised in the premises. For the reasons stated on the record and set forth below, the Court **DENIES** Defendant and Third Party Plaintiff, CR Technologies, Inc.'s, Motion for Summary Judgment [DE 82] and **GRANTS** Twin City Fire Insurance Company's and Hartford Fire Insurance Company's Motion for Final Summary Judgment and Incorporated Memorandum of Law [DE 84–1].

## I. BACKGROUND

### A. The Underlying Action (CRT v. Datanet and CLEC)

On July 29, 2013, Florida's Fifteenth Judicial Circuit entered a Final Judgment in favor of CR Technologies, Inc. ("CRT") and against U.S. Datanet Corporation ("Datanet") and its subsidiary, USD CLEC, Inc. ("CLEC"). The total sum awarded ($644,746.53) was "calculated as the sum of the amount of the verdict ($141,551.20), trebled pursuant to Florida Statutes § 772.11 ($424,653.60) plus contractual interest at the rate of 1.5% per month" in the amount of $220,086.93. Of the total sum awarded, judgment in the amount of $474,284.98 was assessed against both Datanet and CLEC, and the remaining $170,461.55 against Datanet only. The Final Judgment explicitly notes that the verdict amount was trebled because the jury found that Datanet and CLEC had committed civil theft.

By way of background, CRT provided Voice Over Internet Protocol ("VoIP") services to businesses and held the exclusive license for a VoIP software product titled "Wildfire." Datanet was in the business of providing both VoIP and traditional communications services to its customers. On March 1, 2004, CRT and Datanet entered into a Rental Agreement pursuant to which Datanet rented CRT's hardware and software ("System 1") to provide VoIP services to its subscribers. Under the same agreement, CRT operated a second system ("System 2") "co-located" at Datanet's headquarters, from which CRT provided VoIP services to its own customers. At the end of the 42–month agreement, Datanet informed CRT that it would not renew the rental agreement. Shortly thereafter, a dispute arose over the agreement language regarding who was entitled to retain possession of System 1. Datanet refused to return either system to CRT,

charged an increased co-location fee for System 2, and eventually terminated service to System 2. CRT then filed suit.

Final Judgment was entered following a jury trial on CRT's Second Amended Complaint for breach of contract, conversion, civil theft, tortious interference with an advantageous business relationship, violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and negligent misrepresentation. The jury returned a verdict in favor of CRT against Datanet on all counts except tortious interference. The jury also returned a verdict against CLEC on both the conversion and civil theft counts, which at the time of trial were the only counts remaining against CLEC.

B. *The Instant Action (Twin City v. CRT v. Hartford)*

On October 3, 2013, Twin City Fire Insurance Company ("Twin City") filed a Complaint for Declaratory Relief (the "Complaint") [DE 1] against CRT. In its Complaint, Twin City seeks a declaration that it has no duty under an insurance policy issued by Twin City to Datanet (the "Twin City Policy") to indemnify Datanet and CLEC for the amount awarded to CRT in the Final Judgment.

On May 9, 2014, CRT filed its Amended Answer, Affirmative Defenses, Counterclaim for Declaratory Relief and Third Party Complaint [DE 27]. As its First Affirmative Defense, CRT asserts that Twin City is estopped from denying coverage. In its Counterclaim, CRT seeks a declaration that Twin City does have a duty to indemnify Datanet and USC CLEC for the amount awarded to CRT in the Final Judgment. In its Third Party Complaint for Declaratory Relief, CRT seeks a declaration that Hartford Fire Insurance Company ("Hartford") also has a duty under an insurance policy issued by Hartford to Datanet (the "Hartford Poli-

cy") to indemnify Datanet for the amount awarded to CRT in the Final Judgment.

On December 22, 2014, CRT filed its Motion for Summary Judgment [DE 82] as to its First Affirmative Defense, Counterclaim, and Third Party Complaint. On the same date, Twin City and Hartford filed their Motion for Final Summary Judgment and Incorporated Memorandum of Law [DE 84–1].

## II. *SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute is genuine if "a reasonable trier of fact could return judgment for the nonmoving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir.2008). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.*

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir.2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir.2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

"Summary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." *Maryland Cas. Co. v. Florida Atl. Orthopedics, P.L.*, 771 F.Supp.2d 1328, 1331–32

(S.D.Fla.2011) aff'd, 469 Fed.Appx. 722 (11th Cir.2012).

## III. *LEGAL ANALYSIS*

### *The Twin City Policy*

A. *Directors, Officers and Entity Liability Coverage Part*

■ CRT asserts that the Final Judgment against Datanet and CLEC is covered under the Directors, Officers and Entity Liability Coverage Part of the Twin City Policy, which provides that "the Insurer shall pay **Loss** on behalf of an **Insured Entity** resulting from an **Entity Claim** first made against such **Insured Entity** during the Policy Period ... for a **Wrongful Act** by the **Insured Entity**." As defined in the policy,

> "**Loss**" means the amount that the Insureds are legally obligated to pay as a result of a **Claim,** including, without limitation, **Defense Costs, Investigation Costs,** damages, settlement, judgments, and pre- and post-judgment interest.
>
> **Loss** shall include punitive and exemplary damages where insurable by law. Regarding the insurability of such damages, the Insurer shall not contend for any reason, unless appropriate to do so as a matter of law or public policy, that such damages are uninsurable. The insurability of such damages shall be governed by the laws of any applicable jurisdiction that permits coverage of such damages.
>
> **Loss** shall not include:
>
> (1) taxes, fines or penalties imposed by law, the multiple portion of any multiplied damage award, or matters that may be deemed uninsurable under the law pursuant to which this Policy shall be construed; or
>
> (2) non-monetary relief.
>
>       *     *     *
>
> "**Wrongful Act**" means any actual or alleged:

> (1) error, misstatement, misleading statement, act, omission, neglect or breach of duty; or
>
> (2) matter claimed against an Insured Person solely by reason of their serving in such capacity, including service in an Outside Capacity.

Twin City argues that as a matter of law, "Loss" does not include the "restoration of ill-gotten gains." *See CNL Hotels & Resorts, Inc. v. Twin City Fire Ins. Co.,* 291 Fed.Appx. 220, 223 (11th Cir.2008) (quoting *Level 3 Commc'ns, Inc. v. Fed. Ins. Co.,* 272 F.3d 908, 910 (7th Cir.2001)). Twin City also argues that civil theft is not insurable as a matter of public policy. *See, e.g., Ranger Ins. Co. v. Bal Harbour Club, Inc.,* 549 So.2d 1005, 1009 (Fla.1989) (holding that the public policy of Florida prohibits an insured from being indemnified for a loss resulting from an intentional act of religious discrimination). Finally, Twin City argues that the treble damages awarded in the Final Judgment for civil theft under Florida Statutes section 772.11 are "the multiple portion of [a] multiplied damage award," which is expressly excluded from the definition of "Loss" in the Twin City Policy.

CRT counters that the total amount awarded in the Final Judgment, including damages, treble damages, and all pre- and post-judgment interest, is a "Loss" as that term is defined in the Twin City Policy. CRT argues that treble damages are remedial, rather than punitive, in nature, and are therefore not excluded from the definition of a "Loss." CRT also argues that those portions of the definition of "Loss" addressing "punitive and exemplary damages" and "the multiple portion of any multiplied damage award" are ambiguous and do not explicitly exclude treble damages. Therefore, CRT argues that the Twin City Policy should be construed in favor of coverage. Finally, CRT argues

that the allegations in its Second Amended Complaint against Datanet and CLEC, such as the allegations relevant to CRT's claim for negligent misrepresentation, involve "error, misstatement, misleading statement, act, omission, neglect or breach of duty" and are therefore within the definition of a "Wrongful Act" in the Twin City Policy.

■■■ The Court finds that the Final Judgment for Civil Theft is not a "Loss" as that term is defined in the Twin City Policy. As a matter of law, "Loss" does not include the "restoration of ill-gotten gains." *See CNL*, 291 Fed.Appx. at 223 (quoting *Level 3*, 272 F.3d at 910). In addition, the Final Judgment for civil theft is not insurable as a matter of public policy. *See, e.g., Ranger*, 549 So.2d at 1009. Finally, the treble damages awarded in the Final Judgment for civil theft under Florida Statutes section 772.11 are "the multiple portion of [a] multiplied damage award," which is expressly excluded from the definition of "Loss" in the Twin City Policy.

### B. Exclusions from Coverage Under the Directors, Officers and Entity Liability Coverage Part

In light of the Court's finding that the Final Judgment for civil theft is not an insured "Loss" under the Directors, Officers and Entity Liability Coverage Part of the Twin City Policy, the Court need not address whether any of the exclusions contained in the Twin City Policy bars coverage for the Final Judgment. Nevertheless, the Court finds that even if the Final Judgment met the definition of "Loss" as set forth in the Twin City Policy, each of the exclusions listed below bars coverage for the Final Judgment.

### 1. Criminal Act or Willful Violation

■■ Twin City asserts that even if the Final Judgment is a "Loss," coverage is barred by the "criminal act or willful viola-

tion exclusion" in the Twin City Policy, which provides:

> The Insurer shall not pay **Loss** for any Claim:
>
> based upon, arising from, or in any way related to any deliberately fraudulent or criminal act or omission or any willful violation of law by the Insureds if a judgment or other final adjudication establishes such an act, omission, or violation.

Twin City argues that the jury in the underlying action found that Datanet and CLEC acted with felonious intent to steal CRT's property in violation of section 812.014, Florida's criminal theft statute. This finding places the Final Judgment for civil theft firmly within the criminal act or willful violation exclusion. Twin City supports this argument with citation to numerous cases finding that similar criminal conduct exclusion language in D & O insurance policies relieves an insurer of the obligation to indemnify its insured where the insured has been found guilty of criminal or intentional wrongdoing.

CRT counters that this exclusion does not bar coverage for the portion of the Final Judgment attributable to causes of action other than civil theft. CRT asserts that the jury's award of damages in the amount of $141,551. 20 (the cost to replace CRT's two systems) has nothing to do with civil theft and is therefore covered under the Twin City Policy.

The Court finds that even if the Final Judgment is a "Loss," coverage for the Final Judgment is barred by the criminal act or willful violation exclusion. A Final Judgment for civil theft is "based upon, arising from, or ... related to [a] deliberately fraudulent or criminal act or omission or [a] willful violation of law," and falls squarely within the express language of this exclusion in the Twin City Policy.

### 2. Gain of Profit or Advantage Exclusion

■ Next, Twin City asserts that even if the Final Judgment is a "Loss," coverage is barred by the "gain of profit or advantage exclusion" in the Twin City Policy, which provides:

The Insurer shall not pay **Loss** for any Claim:

based upon, arising from, or in any way related to the gaining, in fact, of any personal profit, remuneration or advantage to which the Insureds are not legally entitled if a judgment or other final adjudication establishes that such a gain did occur.

Twin City argues that the phrase "not legally entitled" has been defined as "an advantage or profit resulting from [an insured's] violation of law if he could be required to return such profit." See Jarvis Christian College v. Nat'l Union Fire Ins., 197 F.3d 742, 747 (5th Cir.1999). Twin City further argues that the jury verdict in the underlying action includes findings that Datanet and CLEC appropriated CRT's property for their own use, and that the Final Judgment requires Datanet and CLEC to pay restitution as a result. Twin City again supports this argument with citation to numerous cases applying the gain of profit or advantage exclusion to bar coverage under similar circumstances.

CRT counters that this exclusion does not apply because the Final Judgment does not establish that Datanet gained a personal profit, remuneration, or advantage by depriving CRT of its two systems. Rather, the jury's verdict in the underlying action found only that Datanet caused CRT to suffer the loss of its property. As a result, the cases on which Twin City relies are distinguishable.

The Court finds that even if the Final Judgment is a "Loss," coverage for the Final Judgment is barred by the gain of profit or advantage exclusion. The Final Judgment for civil theft is "based upon, arising from, or ... related to the gaining, in fact, of any personal profit, remuneration or advantage to which [Datanet and CLEC were] not legally entitled." See Jarvis 197 F.3d at 747 (defining the phrase "not legally entitled"). The Final Judgment falls squarely within the express language of this exclusion in the Twin City Policy.

### 3. Breach of Contract Exclusion

■ Finally, Twin City asserts that even if the Final Judgment is a "Loss," coverage is barred by the "breach of contract" exclusion in the Twin City Policy, which provides:

The Insurer shall not pay **Loss** under Insuring Agreement (C) for any Claim: based upon, or arising from, or in any way related to any liability under any contract or agreement, provided that this exclusion shall not apply to the extent that liability would have been incurred in the absence of such contract or agreement.

Twin City argues that the count for civil theft in CRT's Second Amended Complaint in the underlying action incorporates allegations detailing the contractual relationship between CRT and Datanet, and that the jury ultimately found that there was a breach of contract by Datanet, which was the legal cause of damages to CRT. Because the Final Judgment for civil theft is related to the contract between CRT and Datanet, coverage is barred under the breach of contract exclusion. Again, Twin City supports its argument with citation to numerous cases.

CRT counters that under the express terms of the policy, the breach of contract exclusion does not apply where liability would have been incurred in the absence of a contract or agreement. CRT argues that among the various causes of action

asserted in the underlying action, all but one (breach of contract) would have resulted in liability even in the absence of an agreement between Datanet and CRT. In other words, liability for negligent misrepresentation, conversion, civil theft, tortious interference, and violations of FDUTPA would have been incurred in the absence of an agreement. Therefore, the breach of contract exclusion does not apply to the Final Judgment.

The Court finds that even if the Final Judgment is a "Loss," coverage for the Final Judgment is barred by the breach of contract exclusion. The Final Judgment for civil theft, which occurred at the end of a contractual relationship between Datanet and CRT, is "based upon, or arising from, or ... related to ... liability under [a] contract or agreement," and falls squarely within the express language of this exclusion in the Twin City Policy.

### C. *Crime Coverage Part*

■ Twin City argues that the Crime Coverage Part of the Twin City Policy does not insure Datanet and CLEC for their own acts of civil theft. Twin City asserts that a crime insurance policy reimburses an employer when its employees steal from the employer, but does not indemnify an insured for stealing from others.

The Court finds that this argument is supported by the express language of the Crime Coverage Part, which provides that "[t]he Insurer will pay for direct loss of or damage to ... Property that results directly from Theft by an Employee...." However, "This Coverage Part Does Not Apply To And The Insurer Will Not Pay For: ... [l]oss resulting from Theft or any other dishonest or criminal acts committed by the Insured ... [or] by any of the Insured's Employees." Under the plain language of the Crime Coverage Part of the Twin City Policy, Twin City is not obligated to provide coverage for the Final Judgment for civil theft.

### *The Hartford Policy*

### D. *Coverage Under the Hartford Policy*

■ Hartford argues that the Final Judgment for civil theft is not covered by the Hartford Policy, which insures against "property damage" caused by an "occurrence." "Property damage" is defined in the policy as "physical injury to tangible property" and "resulting loss of use." An "occurrence" is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." Hartford notes that while the term "accident" is not defined in the policy, the Florida Supreme Court has defined the term to mean "unexpected or unintended acts and resulting damage." *See Dimmitt Chevrolet, Inc. v. SE Fid.,* 636 So.2d 700, 704 (Fla.1993). Hartford argues that the Final Judgment for civil theft does not involve "property damage," as CRT's computer systems were not physically injured. Hartford further argues that the Final Judgment for civil theft is not an "occurrence" or "accident" because the finding of civil theft includes a finding of criminal intent. Hartford cites numerous cases from both Florida and New York interpreting general liability policies as providing no coverage in the absence of a threshold "occurrence," and asserts that the Final Judgment falls outside the express language of the Hartford Policy.

CRT counters that in addition to physical injury, "property damage" under the Hartford Policy also includes "loss of the use of tangible property that is not physically injured." CRT further argues that the property damage arose from an "occurrence" because none of Datanet's or CLEC's employees testified at trial that

they intended to wrongfully deprive CRT of its property.

The Court finds that a Final Judgment for civil theft is not "property damage" caused by an "occurrence," as those terms are defined in the Hartford Policy. The Final Judgment for civil theft involves neither "physical injury to tangible property and resulting loss of use," nor "loss of use of tangible property that is not physically injured," with respect to any tangible property belonging to the insured parties under the Hartford Policy. In addition, a finding of civil theft includes a finding of intent; therefore, the Final Judgment is not an "occurrence" or "accident." The Final Judgment falls outside of the express language of and is not covered by the Hartford Policy.

### E. Exclusions from Coverage Under the Hartford Policy

In light of the Court's finding that the Final Judgment for civil theft is not covered by the Hartford Policy, the Court need not address whether any of the exclusions contained in the Hartford Policy bars coverage for the Final Judgment. Nevertheless, the Court finds that even if the Final Judgment were within the definition of "property damage" caused by an "occurrence," each of the exclusions listed below bars coverage for the Final Judgment.

#### 1. Expected or Intended Injury

Even if the Final Judgment for civil theft fell within the meaning of "property damage" caused by an "occurrence," Hartford argues that coverage is barred by the "expected or intended injury" exclusion. The Hartford Policy contains an exclusion for "property damage expected or intended from the standpoint of the insured." Hartford argues that there is overwhelming authority in Florida and New York providing that a general liability policy's expected or intended injury exclusion applies if an insured acted with specific intent to injure. Because Datanet and CLEC were found to have acted with criminal intent, coverage is barred under this exclusion.

In response, CRT relies on testimony presented at trial and the jury's finding of negligent misrepresentation to argue that neither Datanet nor CLEC intended to cause property damage.

Even if the Final Judgment for civil theft is "property damage" caused by an "occurrence," the Court finds that coverage is barred by the expected or intended injury exclusion. Because a finding of civil theft includes a finding of intent, any damage resulting from the Final Judgment is "expected or intended from the standpoint of the insured." The Final Judgment falls squarely within the express language of the expected or intended injury exclusion in the Hartford Policy.

#### 2. Care, Custody or Control Exclusion

Finally, Hartford argues that coverage is barred by the "care, custody or control" exclusion, which provides that "[t]his insurance does not apply to ... 'property damage' to (4) personal property in the care, custody or control of the insured." Hartford argues that Florida courts have consistently applied such an exclusion where an insured exercised possessory control over a third party's property.

CRT counters that the phrases "personal property" and "borrowed equipment" are ambiguous as used in this exclusion, and that this ambiguity must be resolved in favor of coverage.

Even if the Final Judgment for civil theft is "property damage" caused by an "occurrence," the Court finds that coverage is barred by the care, custody or control exception. CRT's systems were in the care, custody, or control of Datanet when Datanet committed civil theft.

### Estoppel

CRT asserts as its First Affirmative Defense that Twin City is estopped from denying coverage. CRT argues in its Motion for Summary Judgment that Twin City sent a reservation of rights letter to Datanet before CRT added a claim for negligent misrepresentation in the underlying action, and did not send another letter until after the jury verdict was rendered. CRT further argues that Twin City never sent any reservation of rights letter to Datanet's subsidiary, CLEC, until after the jury verdict.

Twin City counters that under both Florida and New York law, waiver and estoppel may not be used to create coverage beyond the terms upon which the parties agreed. *See, e.g., Commercial Union Ins. v. Int'l Flavors,* 822 F.2d 267, 274 (2d Cir.1987) (holding that estoppel may not be used to extend the scope of coverage); *Aetna Cas. & Sur. Co. of Am. v. Deluxe Sys. of Fla.,* 711 So.2d 1293, 1295–96 (Fla. 4th DCA 1998) (holding that coverage cannot be created by waiver). Alternatively, Twin City argues that the idea that its first reservation of rights letter to Datanet was forged has been disproved; that Twin City at all times defended under a reservation of rights; that Datanet's "Responsible Officer and Consultant" testified that he understood Datanet and CLEC were being defended under a reservation of rights; that CRT fails to offer any record evidence of actual prejudice; and that CRT lack standing to argue Datanet's and CLEC's detrimental reliance.

The Court has already found that the Final Judgment is not covered under the Twin City Policy. Estoppel may not be used to create coverage beyond the terms upon which the parties agreed in the Twin City Policy. *See Commercial Union,* 822 F.2d at 274; *Aetna,* 711 So.2d at 1295–96. Accordingly, the Court finds that Twin City is not estopped from denying coverage for the Final Judgment.

### IV. *CONCLUSION*

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant and Third Party Plaintiff, CR Technologies, Inc.'s, Motion for Summary Judgment [DE 82] is **DENIED.**

2. Twin City Fire Insurance Company's and Hartford Fire Insurance Company's Motion for Final Summary Judgment and Incorporated Memorandum of Law [DE 84–1] is **GRANTED.**

3. No later than 12:00 p.m. on Thursday, March 12, 2015, Twin City and Hartford shall submit the proposed final judgment(s) and shall represent to the Court that CRT has reviewed and does not object to the proposed final judgment(s).

4. The Clerk of the Court is instructed to **CLOSE THIS CASE.**

5. All pending motions are **DENIED AS MOOT** and all deadlines are terminated. **DONE and ORDERED.**